THE BOARD OF COMMISSIONERS OF DICKINSON COUNTY v. THE NATIONAL LAND COMPANY.

ILLEGAL TAXES, *Voluntary Payment of; No Recovery.* The United States, by act of congress, granted certain lands, situated in Dickinson and other counties, to the Kansas Pacific Railway Company, upon certain conditions, and the railway company then contracted to sell a large portion thereof to the National Land Company, the land company agreeing to pay all taxes that might be legally assessed thereon. Before said conditions were complied with or fulfilled, the lands situated in Dickinson county were taxed, and no one paying the taxes, the lands were in

due time offered for sale for the taxes; and no one bidding for the lands, they were struck off to Dickinson county for the taxes; and thereby Dickinson county became the purchaser of the lands for the taxes levied upon them. As to a portion of these lands sold to Dickinson county for the taxes, R., on June 3, 1870, purchased the tax-sale certificates, and had them duly assigned to him. He was a *bona fide* purchaser of the tax-sale certificates, and a *bona fide* assignee of the county, having no connection whatever with either the railway company or the land company. R. afterward paid the taxes levied on the lands for the year 1870, and afterward, on January 8, 1872, sold and assigned said tax-sale certificates to L., who purchased them for and in behalf of the National Land Company. L. afterward paid the taxes levied on the lands for the years 1871 and 1872, and afterward, on December 18, 1874, assigned the tax-sale certificates to the National Land Company. All said taxes were illegal, according to a decision of the supreme court of the United States made in the cases of Culp and Prescott, (*K. P. Rly. Co. v. Culp and Prescott,* 9 Kas. 38, *et seq.; Railway Co. v. Prescott,* 16 Wallace, 603,) for the reason that said lands still belonged to the United States. Afterward, when it was discovered by all the parties (and the courts) that said taxes were illegal, and after a proper demand (as prescribed by § 120 of the tax law of 1868, Gen. Stat., p.1058,) had been made for a return of the money paid into the county treasury by R. and L., for and on account of said tax-sale certificates, this action was commenced by the National Land Company against Dickinson county, to recover said money back. *Held,* That the plaintiff cannot at common law recover said money back, for the plaintiff and the parties paying said money had full knowledge of all the facts which rendered the taxes illegal, and, with such knowledge, paid the money voluntarily. And the plaintiff cannot recover under the statute (said § 120 of the tax law), for, according to the decision of the supreme court of the United States, made in the case of *Lamborn v. The County Commissioners,* (97 U. S. 181), it should be presumed, under the facts of this case, that when the plaintiff paid its money and procured said tax-sale certificates, it did so by way of redeeming the lands from the taxes, and not by way of purchasing tax titles or tax-sale certificates, as contemplated by said statute.

## *Error from Dickinson District Court.*

AT the March Term, 1876, of the district court, the *National Land Company,* as plaintiff, recovered a judgment against the *Board of Commissioners of Dickinson County* for $1,232.09, and costs. The *Board* brings the case to this court. The facts sufficiently appear in the opinion.

*Mahan & Burton,* for plaintiff in error:

We claim that the judgment of the court below was wrong, because the purchase of said tax certificates by the National Land Company of said Richards was a *redemption,* and not a purchase; that it was a payment of the taxes that had accrued against said company's own land.

The purchase of the said tax certificates of Richards by the National Land Company was not a purchase in law, unless if the tax had been legal and valid and the proceedings regular, said land company could have taken a clear title as against any and all parties.

Taxes on lands in Kansas are assessed against the lands themselves, and a tax sale, when valid, confers an absolute title. (*Lamborn v. The Board of Comm'rs of Dickinson Co.,* 97 U. S. 181.)

The National Land Company could not acquire tax title to any part or all of said lands without being guilty of bad faith with the railroad company. (See case above cited, and Blackwell on Tax Titles, p. 399, and cases there cited.)

So if a party, whose duty it is to keep the taxes paid, neglects it, and suffers the land to be sold, and purchases it himself, or suffers a stranger to purchase, and then procures a release to himself, he can acquire no right to the estate against the owner in fee. (Blackwell on Tax Titles, p. 401, and cases there cited.)

The railroad company in accepting the grant of said lands, accepted them upon the conditions offered by the government. (25 Wis. 696; 12 N. Y. 74.)

Among these conditions were that the railroad company should pay the costs of surveying, etc.; these costs were due before the said taxes or any of them were assessed.

The National Land Company, because of its contract with the railroad company of July 29, 1869, is in no better situation to recover than the railroad company, had it paid the taxes.

We do not suppose that it will be contended that the rail-

road company, after having broken its promise to pay said costs for surveying, etc., within the time it should have paid them, and thereby preventing the said lands from being taxable, when they otherwise would have been taxable, could thus take the advantage of its own wrong, and recover, as the land company seeks to do, by this suit. The principle laid down in 22 Wis., 171–2, shows that in reason and equity the land company should not recover in this case.

But even if it was not the fault of the land company and its assignor of said lands that the taxes were invalid, still it was the duty of the land company to pay the taxes assessed upon said lands. It was in possession of said lands at the time of all of the assessments; it claimed ownership of them; it was offering them for sale through its agents; and had the taxes been valid, it would have been bound to pay them to have protected its own interest in the lands. A purchase of said certificates under these circumstances, we submit, was a voluntary payment, and defendant in error cannot recover. (20 Wis., 350; 22 id., 175.)

*Pratt, Brumback & Ferry*, for defendant in error:

It is a perversion of language, and absurd, to hold this contract with Richards a redemption, and that the payment of money to Richards shall have the same effect as payment to the county.

The case is altogether different from that of *Lamborn v. The Board of Comm'rs of Dickinson Co.*, (97 U. S. 181.) In that case, Lamborn, with the money of this land company, and for its use, took out tax-sale certificates from the county or its officers, paying into the county treasury the money required. The county was a party to the transaction, and got the money. The court held that this, though not in form, was in substance a redemption. In both cases, it is true, the land company had contracted with the railway company for purchase of the lands, and to pay *legal* taxes, but no other; but in every other essential particular the cases are different. Unless this court holds that in no event, and under no cir-

cumstances, can a party have the benefit of the statute on which this action is grounded, where he has, or makes, a claim to the land which may be ripened into a title, the judgment below must be affirmed.

The belief of the land company or Lamborn as to the validity or invalidity of the taxes is immaterial. There certainly is more equity in favor of one who buys, believing the certificates good, than of a buyer who considers them bad. It does not appear what was believed in this case.

Counsel for plaintiff in error assert, that the costs of survey, etc., the payment of which had to be made before the lands became taxable, were due "before the said taxes or any of them were assessed." We discover nothing in the statutes to this effect. There was no default on the part of the land company, or railway company, in paying these costs. Had there been, it was no concern of the county.

The land was not taxable. Richards, to whom the certificates issued, had an undoubted right to recover against the county for two years' taxes and interest. He assigned his claim, and no reason is given why his assignee did not succeed to all his rights. The payment of taxes for 1871 and 1872 after Richards assigned the certificates, was made in virtue of the right he had assigned, and was a legal and natural result of the existence and assignment of the certificates. That part of the claim sued for stands on the same footing as the claim for what Richards paid, and interest thereon.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by the National Land Company against the board of county commissioners of Dickinson county to recover for money paid into the county treasury of that county on five separate tax-sale certificates, all of which tax-sale certificates were illegal and void, because the taxes upon which they were founded were illegal and void. The case was tried in the court below by a jury, and the court below, after all the evidence was introduced, gave a general instruction to the jury, charging them

to find for the plaintiff in the sum of $1,232.09, the amount claimed by the plaintiff in its petition; and the jury so found — rendering a general verdict to that effect.

The defendant then moved the court for a new trial, upon the grounds that the verdict was not sustained by sufficient evidence, and was contrary to law, and for error of law occurring at the trial, and excepted to. The court overruled the motion, and the defendant, as plaintiff in error, now brings the case to this court for review.

The only questions necessary to be determined are as follows: 1. Did the court below err in giving said instruction? 2. Is the verdict sustained by sufficient evidence? These two questions may be reduced to one, as follows: Is the verdict the only proper one that could have been rendered in the case upon the evidence introduced? And this question depends solely upon this other question: Was the plaintiff below (which held said tax-sale certificates, apparently as the *assignee* thereof,) in fact and in law the *assignee* thereof, or was the plaintiff only a *tax-payer* or a *redemptioner?* For the plaintiff undoubtedly had the right to recover under § 120 of the tax law of 1868, (Gen. Stat., p. 1058: for the present law, see Comp. Laws of 1879, p. 968, § 145,) unless it was in law a mere tax-payer or redemptioner.

The facts of the case are substantially as follows: The lands for which said tax-sale certificates were issued belonged to the United States, but had previously been granted by an act of congress, upon certain conditions, to the Kansas Pacific railway company. These conditions had not yet been complied with or fulfilled when the lands were taxed; and hence, as held by the supreme court of the United States, in the cases of Culp and Prescott, (*K. P. Rly. Co. v. Culp and Prescott,* 9 Kas. 38, *et seq.; Railway Co. v. Prescott,* 16 Wallace, 603,) the lands still remained the property of the United States, and were not taxable, and the taxes levied upon them were illegal and void. The railway company had contracted to sell a large portion of these lands to the National Land Company, the land company agreeing to pay all taxes that

might be legally assessed or levied upon them.   A large portion of these lands were situated in Dickinson county, and notwithstanding the fact that they were not taxable, (as held by the supreme court of the United States,) still the taxing officers of Dickinson county assessed and levied upon them all the various taxes which were assessed or levied upon any of the taxable lands situated within that county.   No one paying these taxes, the lands were in due time offered for sale for the same, and no one bidding for the lands, they were struck off to Dickinson county for the taxes, and thereby Dickinson county became the *purchaser* of these lands for the taxes levied upon them.   We must presume as against Dickinson county, the defendant in this action, that it was a *bona fide* purchaser.   In fact, it does not deny this.   As to a portion of these lands sold to Dickinson county for the taxes, Charles B. Lamborn, the agent of the land company, paid into the county treasury of Dickinson county the amount required to purchase the tax-sale certificate, (the money belonging to the land company,) and purchased of and from the county the tax-sale certificates, and had them duly *assigned* to him.   Afterward, when it was discovered by all parties (and the courts) that the taxes were illegal, and after Lamborn had made a proper demand (as prescribed by said § 120 of the tax law) for a return of the money paid on said tax-sale certificates, he commenced an action in the federal courts against the county commissioners to recover back said money. But the supreme court of the United States held that he could not maintain the action. (*Lamborn v. Co. Comm'rs*, 97 U. S. 181.)   As to another portion of said lands sold to Dickinson county for the taxes, (and the portion thereof now involved in this action,) C. J. Richards, on June 3, 1870, purchased the tax-sale certificates, and had them duly *assigned* to him.   He was a *bona fide* purchaser of the tax-sale certificate, and a *bona fide* assignee of the county, having no connection whatever with either the railway company or the land company.   This is admitted by all parties.   Richards afterward paid the taxes levied on the lands for the year 1870,

and afterward, on January 8, 1872, sold and *assigned* said tax-sale certificates to Lamborn, who purchased them for and in behalf of the National Land Company. Lamborn afterward paid the taxes levied on the lands for the years 1871 and 1872, and afterward, on December 18, 1874, *assigned* the tax-sale certificates to the National Land Company. All said taxes were illegal and void, for the reasons heretofore given. This present action is to recover back said money, paid by said Richards and said Lamborn into the county treasury, for and on account of said void tax-sale certificates. The action was commenced after discovery of the illegality of the taxes, and after due demand for a return of the money, the same as was done in the case of *Lamborn v. The Commissioners*, stated *ante*. If any portion of the money may be recovered back, it all may, for it was all paid by the parties in form as though they were procuring a valid tax title, and if the statute covers any portion of it, it covers all — that is, if the plaintiff was a purchaser, or an assignee of a purchaser, of an incipient tax title, the statute covers all; but if the plaintiff was merely a tax-payer or redemptioner, it does not cover any.

Can the plaintiff recover? That it cannot, at common law, is admitted; for it paid the money on said tax-sale certificates voluntarily, and with a full knowledge of all the facts. (*Railroad Co. v. Commissioners*, 98 U. S. 541, and cases there cited.) And it is also admitted that, if the plaintiff was a mere tax-payer or redemptioner, it cannot recover under the statute, for the statute does not apply to mere tax-payers or redemptioners. But it is claimed by the plaintiff that it is not a mere tax-payer or redemptioner, but that it is the assignee and holder of tax-sale certificates. *Prima facie*, of course, it is the assignee and holder of tax-sale certificates, and *prima facie*, it has the right to recover under the statutes. But the defendant (the county) claims that the plaintiff is not in law the assignee and holder of tax-sale certificates; that it is not what it appears to be, and that the county may show this by evidence *aliunde*; that it may

show, that although the plaintiff appears on the face of
the papers to be a tax-title holder, yet that it is nothing more
than a mere tax-payer or redemptioner.   And the defendant
claims that the decision of the supreme court of the United
States in the case of *Lamborn v. The County Comm'rs,* (97
U. S. 181,) is decisive of this question and of this whole case.
The plaintiff, however, claims that there is a broad distinction
between the Lamborn case and this case, and its counsel
make a very able and ingenious argument to show such dis-
tinction.   The only difference, however, as pointed out to us,
is as follows:   In the Lamborn case, Lamborn purchased
the tax-sale certificates directly from the county; while in
this case he purchased them from Richards, who was a *bona
fide* purchaser from the county.     Is this difference material?
The material question in this case is whether the holder of
the tax-sale certificate is *a purchaser* or *the assignee of a
purchaser* within the meaning of said §120 of the tax law, or
is he merely a tax-payer or a redemptioner of the lands?
The supreme court of the United States held in the case be-
fore them that Lamborn was not a *purchaser* within the
meaning of said section, and also necessarily held, from the
result of their decision, that he was not the *assignee* of such
a purchaser.     In its opinion the court uses the following
language, to wit:

   " But we are of opinion that the plaintiff cannot be regarded
as a purchaser of the lands.    The moneys were paid by him
on behalf of the National Land Company under the belief that
the taxes were legal and valid, and it is not only apparent
from the facts found that he made the payment in 1872 by
way of redeeming the lands, but if it did not so expressly
appear, it ought to be *presumed,* that he paid the money for
that purpose.    As between the land company and the Kan-
sas Pacific railway company (which had not yet been paid
for the lands) it was the duty of the former to pay all legal
taxes and assessments imposed thereon.    The plaintiff, as the
agent of the land company, could not acquire a tax title
without being guilty of bad faith to the railway company.
Taxes on lands in Kansas are assessed against the lands them-
selves, and a tax sale (when valid) confers an absolute title.

Such a sale, had it been valid in this case, would have given the land company a full and valid title, adverse to that of the railway company; and would have defeated their lien upon the same, for the purchase-money." ( 97 U. S. 184.)

Of course, neither the National Land Company nor any of its agents could get a valid tax title as against the railway company, to whom it owed the legal and moral duty of paying all taxes that might be legally imposed upon the lands; and hence, *as against the railway company,* neither the land company nor any of its agents could become the *bona fide* purchaser or holder of a tax-sale certificate. And it would make no difference whether the purchase was made directly from the county, or was made from some assignee of the county. The disability would attach to the purchaser (the land company) or its agent, and not to the seller (the county or Richards), and it would attach to the purchaser as against the Kansas Pacific railway company, to whom the purchaser owed the duty, and not as against some other person or corporation to whom the purchaser owed no duty. And in either case, whether the purchase was made directly from the county, or indirectly from some assignee of the county, the transaction would be held and *conclusively presumed,* as against the railway company, to be a redemption of the land from the taxes, or a payment of the taxes, and not a purchase of a tax-sale certificate, or of a tax title. But why should this beneficent and equitable presumption be extended farther than to benefit the person or corporation to whom the purchaser owed a duty? Why should it be extended for the mere purpose of benefiting a party who was at the same time wrongfully attempting to impose an illegal tax upon the purchaser? Is it equitable to transform what is in form and upon its face a *purchase,* into a *redemption,* merely for the purpose of benefiting the party committing the wrong—the county? We know of but one principle, legal or moral, human or divine, upon which such a thing might be done, and that is the divine principle, not enforcible by human courts, but only by divine tribunals, which principle has been expressed in the following language, to wit:

"Love your enemies, bless them that curse you, do good to them that hate you, and pray for them which despitefully use you, and persecute you." (Matthew, ch. 5, v. 44.) Here the county wrongfully taxed these lands — so the United States supreme court says. (See Culp and Prescott cases, *ante.*) The county wrongfully purchased them for the taxes. And the county then wrongfully assigned the tax-sale certificates, and got the money of the assignee for them. Upon the face of the papers, the assignee is the *purchaser* of incipient tax titles; and upon the face of the papers the assignee may, under said § 120, recover back all money paid into the county treasury on said tax titles, or upon the tax-sale certificates. But the supreme court of the United States holds that the county, the wrong-doer, may introduce evidence to show that the assignee was under obligation — not to the county, but to a railway company — to pay the taxes, and not to pay these taxes, or any illegal taxes, but to pay only legal taxes; and then, from this fact, and possibly from the other fact (which the court permits the county to prove), that the assignee had contracted to purchase the lands from the railway company, *presumes* that the transaction was a payment of the taxes, or a redemption of the lands from the taxes, and not a purchase of the tax-sale certificates. That is, the supreme court holds that the county, the wrong-doer, may have what appears upon the face of the papers to be incipient tax titles, changed or transformed, or "reformed" into payments of the taxes, or redemptions from the taxes, without the county first "doing equity," by paying back to the holder of such papers the money which it (the county) received by virtue of such papers — issued not as tax receipts, nor as redemption certificates, but in the form of tax-sale certificates, and as creating incipient tax titles.

After the county has introduced evidence to show that the plaintiff was under obligation to the railway company or to some other corporation or person to pay the taxes, may the plaintiff then introduce evidence to show that it was not under any such obligation? May it show that the railway company released it from such obligation? May it show

that it purchased said tax-sale certificates with the knowledge and consent of the railway company? May it show that it purchased said tax-sale certificates, not for the purpose of getting a tax title as against the railway company, but as against some person claiming adversely to the railway company—some preëmptor, or "homesteader" for instance; or some other railroad company or corporation or person? Or may it show that it had doubts concerning the legality of the taxes, and simply purchased the tax-sale certificates, instead of paying the taxes and taking tax receipts, or redemption certificates, for the purpose of recovering the money back under the statute, provided the taxes should be subsequently held to be illegal? Of course, the plaintiff was under no obligation to the *county* or to any one else to pay *these taxes*, for they were illegal; but even if they had been legal, it would not have been under any obligation to the *county*, or to any other person or corporation, except the Kansas Pacific railway company, to pay them or to redeem the lands from them, in preference to purchasing the tax-sale certificates; for *the county would receive just as much money in the one case as in the other*, and the longer the county might have to wait in either case, the more money it would receive, and would be amply and richly paid for waiting; and it would make no difference to the *county*, or to any other person or corporation not interested in the lands who might eventually *own* the same, whether it should be the land company, or Lamborn, or Richards, or the railway company, or any other corporation or person; nor *how* the owner might procure the title, whether by patent from the United States, or by deed from the patentee, or by deed from some one else, or by *tax deed* or sheriff's deed, or otherwise. The county is interested only in getting the taxes, and *not in the purpose* of the payor in paying them. The county has no right to say that any person shall not procure a tax title to lands in which the county has no interest. The county is not interested in the ownership of the lands, nor in what obligations the tax-title purchaser might be under to others.

The writer of this opinion is inclined to think that the judgment of the court below should be affirmed, but his brethren differ with him, and therefore he yields to their judgment, as their opinion is supported by the decision of the supreme court of the United States in the case of *Lamborn v. The County Commissioners*, ante.  The writer of this opinion believes that that decision of the supreme court of the United States is erroneous, and is inclined to think that this court should not follow it, but his brethren overrule him. He has said all that he wishes to say in the foregoing opinion, and the foregoing opinion expresses his view.  His brethren, however, do not agree with him in all that he has said.  We might, however, here say that we all agree in thinking that there is no material distinction between this and the Lamborn case ; so that if we follow that case, it will dispose of this.   As the decision of this case depends upon the construction of our own statutes, we may or may not follow the decision of the supreme court of the United States, just as we think proper. In cases of this kind, the supreme court of the United States should follow our decision.   The chief justice believes that the decision in that case is right, and that we ought to follow it.   He believes that from the facts of this case it ought to be presumed that the plaintiff paid its money and procured the tax-sale certificates by way of redeeming the lands from the taxes, and not by way of purchasing tax titles or tax-sale certificates as contemplated by the statute.

The judgment of the court below will be reversed, and cause remanded for a new trial.

All the Justices concurring.