# CHARLESTON.

## WESTERN LUNATIC ASYLUM *v.* MILLER *et al.*

Submitted January 22, 1887—Decided February 5, 1887.

1. STATUTE OF LIMITATIONS—CORPORATIONS.

Public corporations, whether municipal or simple agencies of the State, when clothed with the capacity to sue and be sued, to have a common seal, to take and hold property and transact business, are governed by the same laws and rules and subject to the same regulations and limitations that natural parties are, except so far as they may be exempted by positive law. (p. 329.)

2. STATUTE OF LIMITATIONS—CORPORATIONS.

   The statute of limitations runs against such corporations in the same manner as it does against private corporations.  (p. 329.)

3. STATUTE OF LIMITATIONS—STATE—FOREIGN CORPORATIONS.

   The rights and immunities of a sovereign State belong to her within her own jurisdiction and territory, and when she becomes a suitor in the courts of a foreign State, she is treated as a foreign private corporation.  (p. 329.)

4. STATUTE OF LIMITATIONS—STATE.

   A sister State suing upon a private claim in another State is not exempted from the operations of the statute of limitations of the *lex feri.*  (p. 329.)

5. STATUTE OF LIMITATIONS—ADMINISTRATOR.

   Where a cause of action accrues to the estate of a decedent at the time of his death, and not before, and no one qualifies as administrator until more than five years thereafter, the law conclusively presumes that an administrator qualified on the last day of said five years and the statute of limitations begins to run in favor of the estate of the decedent from that time, whether or not there is, in fact, any administrator of the estate.  (p. 330.)

6. DECREE BETWEEN CO-DEFENDANTS.

   Where the plaintiff in a suit is not entitled to any relief there can be no decree between co-defendants, nor any recovery by one defendant against another defendant.  (p. 332.)

*J. F. Brown* for appellant.

*B. Brown* and *J. W. Ferguson* for W. C, Miller, appellee.

*J. H. McCue* for Asylum.

*Z. T. Vinson*, for Irby's Heirs.

*Alfred Caldwell, Attorney General*, for State.

SNYDER, JUDGE :

In the year 1850, William Irby, a lunatic from Cabell county, was taken to the Western Lunatic Asylum, at Staunton, Virginia, where he remained as a patient until his death in the year 1863. Peter C. Buffington was appointed committee of the estate of Irby, and in 1854 brought suit in the Circuit Court of Cabell county for the sale of his ward's lands in that county, alleging in his bill that the lands were unproductive and a sale and investment of the proceeds would be advantageous to the estate, and also that a portion of said

proceeds were necessary to pay the debts and the expenses of his ward at the asylum. The presumptive heirs of Irby were made defendants to the bill. Under decrees in said suit the lands were sold and the sales confirmed. A small part of the proceeds was applied to the payment of debts, $950.00 was paid to the asylum on account for the support of Irby and the residue, $905.00, was placed in the hands of W. C. Miller, as the general receiver of the court, who was by decree entered September 1, 1859, ordered to " continue to invest the same in some safe stock or loan until the further order of the court." In November, 1868, an order was entered directing deeds to be made to the purchasers of the lands, which concludes with the words : " and this cause is filed away." This is the last order or proceeding had in this cause, so far as the transcript before us discloses.

In January, 1878, the Western Lunatic Asylum, styling itself a corporation created and existing under the laws of Virginia, and doing business at Staunton in that State, brought this suit in the Circuit Court of Cabell county against W. C. Miller, the general receiver of said court, and the administrator and heirs of Irby to recover $2,383.45 balance alleged to be due to the plaintiff from the estate of Irby for his board, clothing, &c., furnished at the asylum from November, 1850, to March, 1863 ; and to obtain a decree against said Miller as receiver for the aforesaid $905.00 and the interest thereon.

George F. Miller, the administrator of Irby, pleaded the statute of limitations, and filed an answer in the nature of a cross-bill asking for a decree in his favor for said $905.00.

W. C. Miller, the receiver, answered alleging that he had paid over the $905.00 placed in his hands to the heirs of Irby and exhibited receipts showing that he had so paid over a part of said fund; and he also pleaded the statute of limitations and the lapse of time as a bar to any recovery against him.

In March, 1884, the State of West Virginia filed her petition claiming said fund as the assignee of Virginia under the act of February 3, 1863, passed by the reorganized government of Virginia. Acts 1862–3, p. 58.

The cause was referred to a commissioner, who reported

the balance in the hands of the general receiver, after de-
ducting the amounts paid by him to the heirs of Irby, to be
$1,106.84, as of May 7, 1882. To this report there was no
exception,

The court, on August 19, 1884, entered a decree in favor of
the admr. of Irby against W. C. Miller, the receiver, for the
balance reported by the comr. in his hands, and then de-
creed, that said admr., after paying the costs of this suit,
should pay the residue of said fund to the plaintiff on its
claim against the estate of Irby, which with the interest
thereon to the date of the decree was ascertained and fixed
at $5,023.41 and found to be the only indebtedness of said
Irby's estate. From this decree Geo. F. Miller, admr., ob-
tained this appeal.

The first question presented is, whether or not the plain-
tiff's demand is barred by the statute of limitations. The
plaintiff is a Virginia corporation with perpetual succession,
capacity to sue and be sued, a common seal, and the power
to take and hold real and personal property. (Chap. 15,
Acts 1841, p. 38 ; sec. 182, chap. 85, Code Va. of 1849, p. 389.)

If this is simply a public charitable institution, and not a
part of the government itself, then the statute of limitations
applies to it in the same manner that it does to individuals.
The maxim, *mullum tempos occurrit regi*, applies to sov-
ereignty alone. ( *Wheeling* v. *Campbell*, 12 W. Va. 36 ; *For-
syth* v. *Wheeling*, 19 Id. 318.

Public corporations, whether they are municipal or mere
agencies of the State, are all more or less branches of the
government and necessarily clothed with attributes and in-
cidents of sovereignty ; yet when they are clothed with
the capacity to sue and be sued, to have a common seal, to
take and hold property and transact business, they are gov-
erned by the same laws, rules and regulations and subject
to the same limitations that natural persons are, except so
far as they may be exempted or relieved by positive law.
( *Tompkins* v. *The Kanawha Board*, 19 W. Va. 257.)

But conceding as claimed by the plaintiff, that this corpo-
ration and the Commonwealth of Virginia are one and the
same, and that it must be treated here as possessing all the
attributes and immunities which belong to the sovereign
42

Commonwealth of Virginia, still, when Virginia seeks re-dress and becomes a suitor in the courts of this State and beyond her territorial limits, she must lay aside her attri-butes and immunities of sovereignty and assert her demands as private individuals or corporations assert theirs in those courts, subject to the same laws and limitations. Sovereignty, though supreme within its own jurisdiction and territory, does not extend beyond these; and when a sovereign State enters the courts of a foreign State, she does so, with no other rights and immunities than those which pertain to private corporations or individuals. (*Esley* v. *People*, 23 Kan. 202.) The *lex fori* governs in the limitation of actions. (*Johnson* v. *Anderson*, 76 Va. 766.)

But it is contended by the attorney general for this State, that by the act of the General Assembly of Feb'y 3, 1863, Virginia transferred her claim against the estate of Irby to this State. (Acts of Va. 1882–3, p. 58; *Caldwell* v. *Prindle*, 19 W. Va. 604 )

It is not necessary to decide whether or not such transfer has been made, because such decision could not affect the re-sult of the suit. Conceding the transfer was made, this State is not entitled to any relief in this suit : *First*, because she did not bring the suit and is not a plaintiff therein; and *second*, because by statute, which went into effect April 1, 1869, the bar of the statute of limitations is expressly made applica-ble to demands due the State. (Sec. 20, chap. 35 code, p. 221.) It is not overlooked, that this statute was repealed in the act of Dec. 20, 1875, chap. 55, sec. 19, acts 1875, p. 125 —and re-enacted in the act of Feb'y 9, 1882, chap. 18, sec. 20, acts 1882, p. 25. The said statute was therefore in force from April 1, 1869, to Dec. 20, 1875, more than six years, and has continued in force since Feb'y, 1882.

William Irby died at the asylum in Staunton in March, 1863, but so far as the record here shows no one was ap-pointed administrator of his estate until September, 1877, when the same was by an order of the Circuit Court of Cabell county, committed to the appellant, George F. Miller, the then sheriff of said county.

The account of the plaintiff is for board, &c., at the price of $17.00 per month. It is plain therefore that the whole

of the account, except, perhaps, for the last month, accrued in the lifetime of Irby, and the statute of limitations commenced to run in his favor before his death and became barred in five years thereafter excluding the time excepted by the law from the operation of the statute. (*Jones* v. *Lemon*, 26 W. Va. 629.)

But let us assume, though such an assumption is scarcely admissible in any view of the facts in this cause, that the plaintiff's cause of action did not accrue until after the death of Irby, and that no one became his administrator until more than five years from that time. In such event the statute of limitations would commence to run at the expiration of five years from the death; that is, the law, according to our statute, conclusively presumes that an administrator has qualified on the last day of said five years. (Sec. 17, chap 104 of code.)

Irby died, as we have seen, in March, 1863, the statute commenced, therefore, to run against the plaintiff, whether it be treated as a public corporation or the Commonwealth of Virginia herself, from March, 1868, and the statutory bar applicable to such claims as the one here asserted being five years, the demand became absolutely barred in March, 1873. This suit was not commenced until 1878, nearly five years after the bar had become complete. But, if we treat the State of West Virginia as the plaintiff and owner of the claim, the statute began to run as to her April 1, 1869, and her right of action ceased and the bar of the statute became operative in April, 1874, before the repeal of the statute barring claims due the State. For these reasons, it seems to me plain, that the plaintiff, when this suit was instituted, had no existing legal demand against the estate of Irby, and that its bill should have been dismissed by the Circuit Court.

It is, however, asserted here for the plaintiff, that the fund in the hands of W. C. Miller, the general receiver of the court, is a trust fund dedicated by the proceedings in the aforesaid suit of *Buffington, Committee*, v. *Irby and others*, to the payment of the plaintiff's demand. There is nothing in the transcript of the record of that suit or of this to warrant any such claim. But if such had been the fact the proper place to call for the fund would have

been in that suit and not in this independent and collateral suit.

It thus appearing, that the plaintiff is not entitled to any relief, it is well settled, that there can be no decree in the suit between co-defendants or recovery by one defendant against another. (*Hubbard* v. *Goodwin*, 2 Leigh 492; *Hansford* v. *Coal Co.*, 22 W. Va. 70; *Vance* v. *Evans*, 11 Id. 342; *Ould* v. *Myers*, 23 Gratt. 383.)

To escape this rule of law, we are referred to the counsel for the plaintiff and by the attorney general of this State to the following recital in the decree appealed from: "The plaintiff and Geo. F. Miller, admr. of Wm. Irby, dec'd, the State of West Virginia and the defendant, W. C. Miller, by their respective counsel, agree, that if anything should be found due from the said W. C. Miller to any of the parties to this suit, the court shall adjudicate such indebtedness, and to whom the same is due, whether the plaintiff herein has any cause of action or not."

This agreement or consent seems to have been entirely with reference to the decision of the Circuit Court and not as an agreement in the cause to extend to the appellate court. If it had been acted on by the Circuit Court we might consider it in reviewing the decree of that court, but as the decree is not based on or influenced by the agreement, I have grave doubts whether or not we ought to give it any effect in this Court. But be this as it may, the consent can affect only those who assented to it. The heirs of Irby are the parties who appear to be entitled to the fund, and neither they nor their counsel have assented to the agreement. The fund is the proceeds of real estate sold under the provisions of chap. 128, code 1849. By section 12 of said chapter it is declared, that, upon the death of the lunatic, the proceeds of such sale shall "pass to those who would have been entitled to the *land* if it had not been sold or divided." (*Vaughan v. Jones*, 23 Gratt. 444.

Under this statute the fund passed by descent to the heirs of Irby just as the land would have done had it not been sold. The heirs then are the parties materially interested and they have not united in the agreement or consented to any deviation from the due course and regular determination of this suit.

Of course W. C. Miller holding the fund as receiver and trustee can not be protected by the statute of limitations. He is the mere hand of the court holding the fund subject to its order without any right to or personal interest in it. The heirs of Irby may by petition filed in the suit of *Buffington, Committee,* v. *Irby and others* or otherwise call upon the court in that cause to order the said receiver to render an account of the fund and have it paid over to them or otherwise disbursed as may be legal according to the rights of those entitled thereto. That suit does not appear to have ever been dismissed, but even if it had, I apprehend it would still be legal and proper for the court to summon the parties before it and dispose of the fund in the hands of the receiver belonging to the suit and paid over to him under orders entered therein, with directions to invest or retain it until the further order of the court. The power to do so seems to be a necessity, for otherwise it might be difficult to control and disburse the fund.

For the foregoing reasons, I am clearly of opinion, that the decrees of the Circuit Court entered in this cause should be reversed and the plaintiff's bill dismissed with costs to the administrator of Irby against the plaintiff in both courts.

REVERSED.