## Hamilton County Treasurer v. Hartzell

*Monroe H. Anders,* for plaintiff.

*Thomas Edskine,* of *Shields, Clark, Brown & McCown,* and *Joseph H. Cochran,* for defendant.

DANNEHOWER, J., July 3, 1945.—This matter is before the court on an affidavit of defense raising questions of law.

Plaintiff brought suit in assumpsit against defendant, seeking to collect from her money alleged to be due for personal property taxes assessed by Hamilton County, Ohio, against her while she was a resident therein.

The statement of claim sets forth the manner and amounts of the assessments, as well as the amounts paid on account by defendant. The balance stated to be due for the years 1933, 1935, 1936, and 1937 is $2,970.54.

The statement also avers "that in 1935, through her legal counsel, she made a verbal agreement with the county treasurer whereby she, defendant, would pay her delinquencies in monthly instalments of $100 each", and that beginning in July 1935 she made regular monthly payments in at least that amount until September 1938, when she removed from Ohio and took up her present residence in Pennsylvania.

The statement further sets forth the statutory authority of plaintiff to enforce the payment of personal taxes by civil action, and avers that under the law of Ohio, personal property taxes constitute a personal obligation, or debt.

The affidavit of defense raising questions of law challenges the sufficiency of the statement on two main grounds:

1. The tax laws of a State have no extraterritorial effect, and a Pennsylvania court will not entertain an action for the collection of taxes imposed by the revenue laws of Ohio;

2. A voluntary agreement to pay taxes assessed under Ohio laws cannot be enforced in Pennsylvania.

The first question is the most important and far-reaching, and will be considered first. The principle contended for by defendant is said to be applicable as a correct statement of the law of conflict of laws, and notwithstanding the "full faith and credit" clause of the Constitution of the United States. The American Law Institute has stated the rule as follows in Restatement of the Law, Conflicts, §610:

"No action can be maintained on a right created by the law of a foreign State as a method of furthering its own governmental interests."

In Comment "C", under this section, it is said:

"No action can be maintained by a foreign State to enforce its license or revenue laws, or claims for taxes."

This principle has its first mention in this country, in a dictum in Henry v. Sargeant, 13 N. H. 321 (1843), which was a suit by a taxpayer to recover taxes which had been improperly collected. The court said, at page 332:

"It is said that the court will not notice the penal laws, or the revenue laws, of another State. But this principle is not applicable to this case, nor can it be true to that extent. There is no attempt to enforce the penal or revenue laws of Vermont by this action. If there were, it would be held that this was not to be done through the instrumentality of the courts of another State; as, for instance, if the attempt was to collect a tax assessed in Vermont by a suit here . . ."

Similar statements to the same effect may be found in Gulledge Brothers Lumber Co. v. Wenatchee Land Co., 122 Minn. 266, 142 N. W. 305 (1913); Colorado v. Harbeck et al., 232 N. Y. 71, 133 N. E. 357 (1921);

James & Co. v. Second Russian Insurance Co., 239 N. Y. 248, 146 N. E. 369 (1925) ; Martin's Estate, 255 N. Y. 359, 174 N. E. 753 (1931) ; Beadall et al. v. Moore, 199 App. Div. 531, 191 N. Y. S. 826 (1922).

However, actual decisions to the effect that a suit for taxes imposed by State statute will not be entertained outside the taxing State (such a statute not being entitled to full faith and credit) are not plentiful. The cases found upholding this principle are Moore v. Mitchell et al., 30 F.(2d) 600 (C. C. A. 2d), affirmed on another ground, 281 U. S. 18 (1929) ; Bliss' Estate, 121 Misc. 773, 202 N. Y. S. 185 (1923) ; Martin's Estate, 136 Misc. 51, 240 N. Y. S. 393 (1930) ; Maryland v. Turner, 75 Misc. 9, 132 N. Y. S. 173 (1911). Denying the principle is the case of Holshouser v. Copper Co., 138 N. C. 248, 50 S. E. 650 (1905).

Generally speaking, obligations to pay money arising under the statutes of one State must be and are given recognition in the courts of another State. It has been contended, however, that exceptions to this general rule have been made in cases of obligations under taxing statutes and penal statutes. The reason for such an exception has been stated by L. Hand, J., in his concurring opinion in Moore v. Mitchell et al., 30 F.(2d) 600 (1929), as follows (p. 604) :

"While the origin of the exception in the case of penal liabilities does not appear in the books, a sound basis for it exists, in my judgment, which includes liabilities for taxes as well. Even in the case of ordinary municipal liabilities, a court will not recognize those arising in a foreign State, if they run counter to the 'settled public policy' of its own. Thus a scrutiny of the liability is necessarily always in reserve, and the possibility that it will be found not to accord with the policy of the domestic State. This is not a troublesome or delicate inquiry when the question arises between private persons, but it takes on quite another face when it concerns the relations between the foreign

State and its own citizens or even those who may be temporarily within its borders. To pass upon the provisions for the public order of another State is, or at any rate should be, beyond the powers of a court; it involves the relations between the States themselves, with which courts are incompetent to deal, and which are entrusted to other authorities. It may commit the domestic State to a position which would seriously embarrass its neighbor. Revenue laws fall within the same reasoning; they affect a State in matters as vital to its existence as its criminal laws. No court ought to undertake an inquiry which it cannot prosecute without determining whether those laws are consonant with its own notions of what is proper."

When Moore v. Mitchell et al. reached the United States Supreme Court, however (281 U. S. 18), the court based its affirmance on the sole ground that the Indiana tax officer, claiming only by virtue of his office and authorized only by the laws of his own State, had no capacity to sue, for the collection of taxes due to his State, in a Federal court in another State. The court, in speaking of the principle contended for by defendant here, said merely (p. 24):

"It is not necessary to express any opinion upon the question considered below, whether a federal court in one State will enforce the revenue laws of another State."

To date, the Supreme Court has not expressed an opinion on the question we are considering. The nearest it has come to doing so is a statement in Milwaukee County v. White Co., 296 U. S. 268 (1935), where it is said, at page 275:

"Whether one State must enforce the revenue laws of another remains an open question in this court. See Moore v. Mitchell, 281 U. S. 18, 24. But we do not stop to inquire whether the considerations which have been thought to preclude the enforcement of the penal laws of one State in the courts of another are applicable to

taxing statutes; or whether the mere possibility of embarrassment in their enforcement should stay the hand of the court of another State in cases where in fact such embarrassment will not occur. *For present purposes we will assume that the courts of one state are not required to entertain a suit to recover taxes levied under the statutes of another* and confine our inquiry to the single question whether they must nevertheless give full faith and credit to judgments for such taxes." (Italics supplied.)

The Supreme Court did decide that one State was required to give full faith and credit to a *judgment* for taxes levied under statutes of a foreign State, and refused to adopt the rule of the A. L. I. Restatement of the Law, Conflicts, §443, but that decision has no bearing here.

It seems perfectly well established that the penal laws of one State will not be enforced by the courts of another State. The reason for that rule—that such enforcement would involve an improper scrutiny of the relations between the foreign State and its citizens—is equally applicable to taxing statutes.

In 3 Beale, Conflict of Laws, §610.2, page 1638, it is said:

"Nevertheless it is not difficult to find fundamental considerations which seem to furnish ample justification for the refusal to allow the action. As Judge Learned Hand pointed out [Moore v. Mitchell et al., 30 F. (2d) 600 (1929), quoted supra] the relation between a foreign State and its citizens is properly no concern of the forum. Furthermore since the interest of the foreign State is directly affected, the interstate relation should be determined not by the court but by the respective sovereign powers. Also the court may well feel very reluctant to assume the burden of administering an intricate tax system with which it is totally unacquainted, especially in view of the crowded dockets which are to be found almost everywhere."

We therefore conclude that regardless of the justice of the claim and the duty of defendant to pay, the suit may not be entertained.

We now consider whether defendant's "agreement" to pay her taxes constitutes a firmer basis for the action. Counsel for plaintiff contended at the argument that there was an actual forbearance to sue, even though no promise of forbearance was given, and that this is consideration for defendant's promise, on which recovery is sought. Disregarding the fact that such forbearance is not pleaded as consideration, it is well-established that "Mere forbearance without request . . . is insufficient": Williston, Contracts (rev. ed. 1936), sec. 136, pages 479, 480. Therefore, it is impossible for plaintiff to succeed here by setting up a collateral promise, or "agreement" by defendant, and the questions of law must be decided in defendant's favor.

And now, July 3, 1945, for the foregoing reasons, the questions of law raised in defendant's affidavit of defense raising questions of law are decided in favor of defendant and against plaintiff. An exception is granted plaintiff.

---

DANNEHOWER, J., October 16, 1945.—This case was previously before the court on two occasions: First, on a petition under the Act of March 5, 1925, P. L. 23, questioning jurisdiction, decided favorably to plaintiff on April 12, 1945; and second, on an affidavit of defense raising questions of law, decided in favor of defendant and against plaintiff on July 3, 1945. The present petition, to reargue case and amend the statement of claim, was filed on July 6, 1945, an answer was filed thereto, and the matter having been argued before the court en banc, is now pending for decision.

The facts have been thoroughly recited in our two former opinions, but a brief review may be helpful.

The suit is in assumpsit, to collect from a Pennsylvania resident taxes assessed against her while she resided in Ohio. The statement of claim as originally filed, sought recovery of the tax as such, and also on the ground that defendant "made a verbal agreement with the county treasurer whereby she, defendant, would pay her delinquencies in monthly instalments of $100 each". When questions of law were raised, we held that this court would not entertain an action for the collection of taxes imposed by the revenue laws of Ohio, and also held that the "agreement" to pay, apparently voluntary in nature, could not be enforced here.

Plaintiff, in his present petition, in addition to reasserting the contention that the court should entertain the suit, asks leave to amend his statement of claim in order to set forth more clearly the nature of and the consideration for the "verbal agreement" entered into in 1935, and under which defendant made payments until September 23, 1938.

Defendant filed an answer resisting the petition, and asking that leave to amend be denied, principally on the ground that essentially no new facts are set forth and that the claim under the contract would be barred by the statute of limitations.

At the argument, the matter was treated as a reargument of the affidavit of defense raising questions of law, but principal emphasis was placed upon the request for leave to amend.

No new reasons or authorities have been advanced by plaintiff which persuade us to alter our former decision, in accord with the A. L. I. Restatement of the Law, Conflicts, §610, that:

"No action can be maintained on a right created by the law of a foreign State as a method of furthering its own governmental interests."

Therefore, without discussing that matter further, we pass to a consideration of the petition for leave to

amend, and for the purpose of this consideration, we shall assume that the statement of claim, as proposed to be amended, sufficiently pleads a verbal contract between the parties.

In the first place, such a contract does not remove the claim from the category contemplated in the above-quoted section of the restatement. What plaintiff seeks to recover, whether or not the legal liability of defendant is supported by a promise, is a tax claim, or a right created by Ohio's revenue laws, and once the nature of the claim is disclosed, it falls within the prohibition of the restatement and of our previous decision (of July 3, 1945). Therefore, the statement of claim, if amended, would be subject to the same objections as originally made.

In addition, the proposed amendment clearly shows a claim that ordinarily would be barred by the statute of limitations. Plaintiff contends, however, that such a defense would not be available here, because the statute may not be pleaded against the State, or a subdivision thereof. While there is varied thought on how far a State's exemption from the bar of the statute is extended to other political subdivisions, such exemption generally does exist, unless the State laws specifically provide otherwise. However, assuming that this plaintiff would, in Ohio, have the same exemption from the bar of the statute as the State, the picture is completely changed when he seeks to enforce a claim in a foreign jurisdiction. There is little authority on this point. However, it seems fundamental that once the State, as such, goes beyond its territorial limits, and seeks recourse in the courts of a sister State, it must necessarily lay aside its attribute of sovereignty, and go into those courts as an ordinary person. As one authority puts it:

"Unless the statute provides to the contrary or unless the State is necessarily included by the nature of the mischiefs to be remedied, statutes of limitation do

not apply to a State when suing in its sovereign capacity. . . . It seems, however, that if a sovereign State enters the courts of a foreign State, it does so with no other rights and immunities than those which pertain to private corporations or individuals": 34 Am. Jur., Limitation of Actions, §393, p. 307; see, also, Western Lunatic Asylum v. Miller et al., 29 W. Va. 326, 1 S. E. 740.

Therefore, any claim made by plaintiff, either on the basis of contract or on the basis of his authority to assess a tax, would fall within the bar of the statute, and inasmuch as we view the matter in this light, it would be of no benefit to plaintiff to permit him to amend his statement of claim.

Counsel for both parties have reargued the case before the court, so no formal disposition of the petition to reargue is necessary.

And now, October 16, 1945, for the foregoing reasons, plaintiff's petition for leave to amend the statement of claim is dismissed. An exception is granted to the plaintiff.