## Ritz Estate

116

*Gwilym Price, Jr.*, for executor.
*Homer W. King*, for State of California.
*Charles F. Wieland*, for Ralph Johnson.
*Charles W. Herald*, for Commonwealth.

RAHAUSER, J., April 2, 1956.—Decedent, Marie Emilie Ritz, died at the Hollywood Presbyterian Hospital, Los Angeles, Calif., December 24, 1952. Her last will and testament was probated in the Register of Wills Office of Allegheny County, January 22, 1953. The preamble of the will reads as follows:

"I, MARIE EMILIE RITZ, . . . a legal resident of the State of Pennsylvania, temporarily in Los Angeles, California, for reasons of health, being of lawful age and sound and disposing mind and memory and not being actuated by any duress, . . . do hereby make, publish and declare this to be my Last Will and Testament, . . ."

In the seventh paragraph she appointed Mr. Fred W. Cotton, of the Peoples-Pittsburgh Trust Company, executor "of this my Last Will and Testament". In accordance with this provision Mr. Fred Cotton received letters testamentary on the estate and proceeded to administer the said estate.

The first and final account was filed and came on for audit November 18, 1953. A decree of December 14, 1953, showed a balance for distribution of $36,-803.04. Of this balance $4,600 was suspended to cover other claims, including the possible claim of the Tax Division of the State of California which was disallowed at the audit on the theory that there was no

evidence before the court to show that decedent was a resident of the State of California.

A supplementary decree was later filed allowing the claim of Dr. Ralph M. Johnson in the amount of $1,692.81.

The State of California, through counsel, filed exceptions to the ruling and the decrees of this court in refusing to allow its tax claim filed with executor of this estate. The exceptions filed to the decree of distribution by the State of California are as follows:

"And now comes the State of California by HOMER W. KING, ESQ., its Attorney, and files Exceptions to the Decree of Distribution handed down December 14, 1953 on the above matter:

"1. Exception is taken to the dismissal of the claim for the Inheritance Tax on behalf of the State of California, said claim being in the sum of $2,524.27. The basis of the Exception being that the deceased was a resident of the State of California, having moved there in 1940 and at the time of moving to California, she abandoned and gave up her residence in the City of Pittsburgh, State of Pennsylvania, and did not intend to ever return to the State of Pennsylvania for living purposes. At the time the decedent moved to California, she disposed of all her household goods and personal possessions except those required for living purposes which were transported with her to California. The only connection the decedent retained in Pennsylvania was to deposit certain securities and investments which do not indicate an intention to maintain a domicile in Pennsylvania."

The case came before the court en banc on the above exceptions filed and by order of the court en banc, May 13, 1955, the above matter was returned to the auditing judge to take testimony pertaining

to the tax claim of the State of California. By order of this court and by a stipulation of the parties, interrogatories were filed and depositions were taken from numerous people in California to establish the domicile of decedent there.

Facts established in the record so filed prove that Marie Emilie Ritz was 72 years of age at the time of her death on December 24, 1952. Decedent left Pittsburgh in 1941. At the time she left Pittsburgh in 1941, she left her furniture, clothing and personal belongings, and subsequently gave Mr. Fred Cotton orders to dispose of the furniture. Decedent owned no real estate in Pennsylvania. After 1941 decedent retained in Pittsburgh all her stocks, bonds and securities in the care and custody of the aforementioned Fred W. Cotton, an officer of the Peoples Bank and Trust Company. In 1951 decedent filed an application for a passport with the State Department of the United States. In the application decedent stated that she was a "permanent resident of Los Angeles, California". In 1946 decedent canceled a voting registration previously made in Los Angeles, Calif., and stated thereon her reason for said cancellation as "returning to Pittsburgh".

The depositions of a number of persons are to the effect that decedent never intended to live in Pennsylvania and, in fact, made her own burial arrangements with a mortuary firm in California.

Attorney J. E. Simpson, of Los Angeles, who prepared the probated will, explained in his deposition that the preamble of the will was copied from a previous will of decedent dated June 28, 1946.

There is evidence that decedent made several trips outside the State of California between the periods of 1941 and the time of her death in 1952. On none of these trips did she ever visit Pennsylvania. De-

cedent made trips to Hawaii, Paris and Switzerland.

The testimony of various persons, other than those mentioned above, who knew decedent in California was all to the general effect that she considered California her residence. The depositions show further that decedent joined several clubs and organizations while in California and in each case gave her address as the Hotel Figuroa, Los Angeles, Calif. Decedent recorded a prearrangement with Pierce Brothers Mortuary in Los Angeles, Calif., for burial services. They performed these services on December 26, 1952.

These are the substantial facts presented by the State of California in its contention that decedent was a resident of that State.

The California tax claim presented at the audit was as follows:

"In the Matter of the Estate of
MARIE EMILIE RITZ,
Deceased.
CASE NO. 343
CREDITOR'S CLAIM

Date of Death: December 24, 1952

The undersigned, a creditor of Marie Emilie Ritz, deceased, herewith presents its claim against the estate of said deceased, with all the necessary vouchers, to

FRED W. COTTON, as executor of said estate, for approval, as follows:

ESTATE OF MARIE EMILIE RITZ, deceased,
TO FRED COTTON Dr.
Inheritance taxes due the State of California
Approximately $2,524.27"

The evidence presented by executor relative to the domicile of decedent was presented at the time of the audit. Executor, Mr. Fred W. Cotton, was the sole witness called for the estate and his testimony developed the factual situation hereinafter discussed.

Mr. Cotton testified that he had handled the affairs of decedent for many years as an officer of a local bank and also as a close friend and counselor of decedent. During the years of decedent's stay in California Mr. Cotton testified that he had many occasions to contact decedent and that decedent always expressed to Mr. Cotton her intention and desire to return to Pittsburgh. Decedent in her writings to Mr. Cotton never wavered in the expression of this intention. Indeed, when Mr. Cotton advised transferring decedent's personal affairs and assets to California, decedent expressed her unwillingness to do this for the reason that such a transfer would be useless in view of her intention to return to Pittsburgh and that such transfer, if made, would be of only temporary duration.

Mr. Cotton testified that he handled the personal affairs of decedent from his office in Pittsburgh, and that, by reason of the fact that decedent considered her home and domicile in Pittsburgh, all taxes were prepared by him and filed by decedent in Pittsburgh. For all the years that decedent remained in the State of California she filed and paid her personal property tax in the County of Allegheny. She filed and paid her Federal income tax at Pittsburgh.

Mr. Cotton testified that all decedent's personal assets were kept in Pittsburgh in the Oakland branch of the Peoples First National Bank and Trust Company. For this purpose decedent kept a safe deposit box at that location and, although he urged her at various times throughout her period of stay in California to transfer such personal assets to California decedent refused to make such a transfer because of the avowed intention of returning to Pittsburgh and her express declaration that she considered Pittsburgh her home.

Mr. Cotton testified that over the years that he had known decedent he knew that she had considered herself a resident of the City of Pittsburgh. Indeed, her

closest personal friendships were here in Pittsburgh where she resided for many years prior to her sojourn in California. Louis Ritz, decedent's husband, was for many years the French consul in Pittsburgh, a capacity in which he served at the time of his death. Mr. Ritz was buried here in Pittsburgh in the family plot in Homewood Cemetery, the plot where decedent is now buried.

Mr. Cotton testified that at the time of her departure for California decedent had stored her furniture and some other personal effects in Pittsburgh, and that after some years of paying for this storage, she arranged for some of her many friends in the city to pick up the property and hold said property until such time as she should return to Pittsburgh to live.

There is no dispute in the testimony that the original domicile of decedent was Allegheny County, that at the time she left Pittsburgh there was a manifest intent on her part to retain her domicile here in Pittsburgh. In view of all these circumstances the court is of the opinion that the burden of establishing the domicile of decedent is on the State of California.

In a per curiam opinion of the Supreme Court in Barclay's Estate, 259 Pa. 401, where the president judge of this court wrote the opinion, the court said, at page 404:

"In discussing the question of domicile in Mitchell v. United States, 21 Wall. 350, it was said: 'A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality, and, second, the intention to remain there. The change cannot be made except facto et animo. Both are alike necessary. Either without the other is

insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired the old one remains.' In Price v. Price, 156 Pa. 617, the decedent was a native of West Chester, Chester County, Pennsylvania. It was conceded that he acquired a domicile of choice in Philadelphia and later acquired a domicile of choice in New York City. It was alleged that he abandoned his New York domicile and resumed his domicile of origin. It appeared that he actually returned to West Chester and resided there until he died, leaving a will good in Pennsylvania and not in New York. The jury found that the decedent did not abandon his New York domicile and did not come to West Chester with the intention of making his permanent home in Pennsylvania, and Mr. Chief Justice Sterrett, in affirming the lower court, said that the prior domicile must be presumed to continue 'until another sole domicile has been acquired by actual residence coupled with the intention of abandoning the domicile of origin. This change must be animo et facto, and the burden of proof is on the party who asserts the change.' In Jacobs on the Law of Domicile, Sec. 125, it is said: 'All jurists agree that a change of domicile of whatever grade is a question of act or fact and intention and cannot be accomplished without the concurrence of both,' and sec. 122, 'A change of domicile is always presumed against'."

The domicile of Marie Emilie Ritz is presumed to continue here until she actually took up residence in some other place and abandoned her domicile here. The burden of proving these facts was upon California. In Shaw Adoption, 381 Pa. 107, the court affirmed a decree on the opinion of the court below which said (1 D. & C. 2d 549 at p. 555):

"That domicile of origin must be presumed to continue until another sole domicile has been acquired by actual residence coupled with the intention of abandoning the domicile of origin. This change must be animo et facto, *and the burden of proof is on the party who asserts the change*: Price v. Price, 156 Pa. 617. (Italics supplied.)

In the analysis of the proof of domicile offered by the State of California we find it insufficient to meet this burden. The registration in California does not meet this burden for, even here, the proof is clear that when decedent found out that registration might indicate she was a resident of California, she withdrew her voting registration, an act that most emphatically indicates her intention to retain the domicile of origin.

The action of decedent in paying her personal property taxes here in Allegheny County, in holding her household furniture and distributing it among her friends until she returned, in leaving her personal belongings with her friends in Pittsburgh, in arranging for her interment here, all speak with more force than any declaration contained in a passport or made in connection with her club associations.

This court finds as a fact that decedent was domiciled in Pennsylvania and, therefore, her estate is not subject to California inheritance taxes.

The State of California has failed to prove its claim for inheritance taxes in other respects. The amount of $2,524.27 was not reduced to judgment. The State of California waived any right to administer the estate. It took no appeal from the probate of the will of decedent in this county and State.

The record shows that the State of California had ample time to reduce the claim to a certain amount and also to reduce the same to judgment if the State

had jurisdiction over decedent. The claim for the State of California is not only not reduced to judgment, but it is filed in the approximate amount of $2,524.27.

A decree of this court entered February 11, 1954, was a final order of allowance for claims and deductions against this estate. At that time the amount of the net estate was fixed by a decree of this court. In the face of this fact the State of California made no effort to reduce its claim to a certain amount. The claim in its present form cannot be allowed.

Any claim submitted by a creditor in the form of the one submitted by the State of California would not be allowed. How can it be said that this California tax claim should receive a preference in treatment? In the case of County Treasurer of Hamilton County, Ohio, v. Hartzell, 55 D. & C. 100 at p. 108, Judge Dannehower states:

"However, it seems fundamental that once the State, as such, goes beyond its territorial limits, and seeks recourse in the courts of a sister State, it must necessarily lay aside its attribute of sovereignty, and go into those courts as an ordinary person. As one authority puts it: 'Unless the statute provides to the contrary or unless the State is necessarily included by the nature of the mischiefs to be remedied, statutes of limitation do not apply to a State when suing in its sovereign capacity. . . . It seems, however, that if a sovereign State enters the courts of a foreign State, it does so with no other rights and immunities than those which pertain to private corporations or individuals': 34 Am. Jur., Limitation of Actions, §393, p. 307: See, also, Western Lunatic Asylum v. Miller et al., 29 W. Va. 326, 1 S. E. 740.

"Therefore, any claim made by plaintiff, either on the basis of contract or on the basis of his authority

to assess a tax, would fall within the bar of the statute, and inasmuch as we view the matter in this light, it would be of no benefit to plaintiff to permit him to amend his statement of claim."

The claim of the State of California is disallowed for the reason that there is no definite amount proved.

In view of the above facts and of the pleadings here filed, it is apparent that the State of California must avail itself of and use the courts of the Commonwealth of Pennsylvania for the enforcement and the collection of this tax.

In Detroit v. Girard Packing Co., 161 Pa. Superior Ct. 607, the question was raised as to whether an officer of another State had legal capacity to sue in the courts of this State for taxes due to the sister State. Judge Dithrich, in holding that the treasurer of the City of Detroit did not have legal capacity to maintain such a suit, said, at page 608:

"Under the authority of Moore v. Mitchell, 281 U. S. 18, 50 S. Ct. 175, 74 L. ed. 673, the order must be affirmed. In that case it was held that the county treasurer of Grant County, Indiana, lacked legal capacity to bring suit in the State of New York for the recovery of delinquent taxes. The court said, page 24:

"'He is the mere arm of the State for the collection of taxes for some of its subdivisions and has no better standing to bring suits in courts outside Indiana than have executors, administrators, or chancery receivers without title, appointed under the laws and by the courts of that State. It is well understood that they are without authority, in their official capacity, to sue as of right in the federal courts in other States. . . . The reasons on which rests this long established practice in respect of executors, administrators and such receivers apply with full force here. We conclude that petitioner lacked legal capacity to sue.

" 'It is not necessary to express any opinion upon the question considered below, whether a federal court in one State will enforce the revenue laws of another State.'

"Therefore, in the language of the U. S. Supreme Court in Milwaukee County v. M. E. White Co., 296 U. S. 268, 275, 56 S. Ct. 229, 80 L. ed. 220, 'Whether one state must enforce the revenue laws of another remains an open question in this Court. See Moore v. Mitchell, 281 U. S. 18, 24.' It is important to bear in mind that this suit was not brought upon a judgment obtained in a sister state, but merely upon a tax claim.

"The order sustaining preliminary objections is affirmed."

This principle is applicable to this case. In what respect other than on the basis of comity can the taxing official of the Inheritance Tax Division of the State of California have any legal capacity to maintain the instant claim in this court?

In considering whether the tax claim would be allowed as a matter of grace to a sister State the claim must likewise be denied.

Executor of this estate has paid the substantial part of this inheritance tax to the State of Pennsylvania in the amount of $4,507.50. These payments were made while the State of California stood by and neither appealed from the probate of the will, or reduced its claim to a certain amount of judgment, or appealed from the appraisal and assessment of the Inheritance Tax Division of Pennsylvania.

In Beddall Trust, 1 Fiduc. Rep. 149 at p. 153, the court allowed a tax claim of California on the basis of comity. There Judge Hunter said:

"In the instant case the claim is on a judgment,

but the California court had no jurisdiction to enter it against property in Pennsylvania, and against the trustee who was not made a party to the proceeding. On this point of law I conclude that the judgment for the tax claim cannot be collected as a matter of right in Pennsylvania.

"I am of opinion, however, that I should consider whether the special circumstances of this case do not impel me as a matter of comity to recognize California's right to a tax. See the Pennsylvania Act of May 22, 1933, P. L. 839, 72 PS 2432, providing for reciprocity between states in ancillary administrations.

"Some, if not all, of the property under the deed was property of the settlor herself. She reserved both a life estate and a power to appoint by will. The transfer was one intended to take effect in possession or enjoyment after the death of settlor.

"Pennsylvania has assessed no transfer tax so that the property will pass tax free if the California tax is not recognized.

"This power was exercised by the will of the settlor. She directed the payment of her debts, made provision for the perpetual care of her cemetery lot, and appointed the residue of her estate which includes the appointed estate, to The Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee, so that The Pennsylvania Company for Insurances on Lives and Granting Annuities now holds the property by appointment in her will.

"The usual rule is that where there is a blending of appointed and individual estates, the appointed estate will be awarded to the personal representative of the appointor at the audit of whose account the rights of all parties will be determined: The Pennsylvania Company's Account, 264 Pa. 433; Kates's Estate, 282 Pa. 417. This does not mean, however,

that an appointed estate should be sent out of the Commonwealth and appointees in Pennsylvania be required to defend their rights in a distant court. The rights of non-resident claimants may be fully protected by an order such as was made in the instant case, that distribution here under the power be suspended until it appears at the domicile that there are no unpaid claims against the fund.

"Were the donor and donee of the power different persons the property would be taxed, if at all, as the property of the donor and not of the donee. Here, however, the donor and donee are one and the same person. The transfer was one intended to take effect at the death of the settlor and she was then a resident of California. In my opinion the tax claim is a just one and I allow it as a matter of grace and comity."

The court does not believe the State of California is entitled to such comity in this case because of the obviously inequitable result that would occur. The estate would be compelled to make two inheritance tax payments, California and Pennsylvania.

The Pennsylvania tax must be paid. The appraisement in this estate was filed July 14, 1953. See 72 PS §2327.

No appeal was taken in this estate. An appraisement unappealed from is final: Ernst's Estate, 317 Pa. 367, 177 A. 19 (1935); Darsie's Estate, 354 Pa. 540, 47 A. 2d 815 (1946).

The administration of this estate was raised in Pennsylvania by the original probate of the will and grant of letters. If that proceeding was incorrect because decedent was not domiciled here, appeal could have been taken from the probate. Since it was not, Pennsylvania law will control the administration of this estate.

There is still another reason why California is not

entitled to the use of this forum for the collection of said tax. More than two years have passed since the substantial part of. the inheritance tax was paid, so that the time has now passed for the estate to petition the Board of Finance and Revenue for the refund of the amount previously paid. See 72 PS §2444.

The court is of the opinion that if there were no other questions here involved except the inequities that would arise if this claim could be proved, claimant would not be entitled to have extended to it the principle of comity of this State.

The claim filed by the State of California for inheritance tax is disallowed and a final decree will be drawn in accordance with this opinion.