**Richmond.**

THE MANLY MANUFACTURING COMPANY *v.* BROADDUS & ANOTHER.

April 15, 1897.

1. BOARD OF SUPERVISORS—*Power to contract for public buildings—Suit by tax-payer to settle account between the board and a claimant.*—The board of supervisors of a county in its corporate capacity has full power to provide public buildings for the county, and if it fails to do so may be compelled by the Circuit Court of the county by *mandamus* to perform its duty.   Having power to contract for such buildings it may make any changes in the contract which it deems proper.   In the absence of any charge of fraud or collusion on the part of the board of supervisors, a tax-payer cannot come into a court of equity merely to settle an account between a claimant and the board, growing out of a contract which the board had full power to make.   The board has a full, adequate, and complete remedy for the enforcement of its contracts, and the rights of all persons having contracts with, or claims against the county, are amply protected by the provisions of sections 836, 837 and 838 of the Code.
2. COUNTY PROPERTY—*Possession by board of supervisors—Suits by or against board of supervisors.*—The right to the possession of county property is in the board of supervisors of the county.   If the actual possession be in another the board may acquire possession as other suitors do.   The board, as such, should be a party to all proceedings by or against it.
3. COUNTY PROPERTY—*Mechanics' lien on public building.*—The board of supervisors cannot give a lien on a public building of the county, nor does the contractor, nor those who furnish materials, nor the artisans employed in its construction, acquire a lien of any kind on it.   Those who contract with the board do so solely upon the faith and credit of the county, and not with the expectation of securing their compensation by a lien.

Appeal from a decree of the Circuit Court of Page county, pronounced November 5, 1896, in a suit in chancery wherein the appellees were the complainants, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*Marshall McCormick*, for the appellant.

*Barton & Boyd*, for the appellees.

KEITH, P., delivered the opinion of the court.

The decree appealed from in this case was rendered in a cause in which Andrew Broaddus and R. S. Parks, residents and tax-payers of Page county, suing for themselves and other tax-payers, are plaintiffs, and the Manly Manufacturing Company, of Dalton, Ga., John W. Rothgeb, A. H. Keyser, H. C. Knicely, and G. T. Brubaker, who are described as members of the board of supervisors of Page county, are defendants.

The bill charges that the board of supervisors of Page county contracted with the Manly Manufacturing Company for the construction of a county jail and jailor's residence at the county seat for the sum of $6,486.24. The building was to be erected in accordance with the terms of a written contract, which is filed as an exhibit with the bill, and certain specifications and plans accompanying it. In this agreement the board of supervisors reserved the right to make changes and alterations in the character and quality of the work, at a fair and reasonable valuation to be fixed and agreed upon in writing between the parties before proceeding therewith, and no claim was to be made against the county of Page for extra work or material unless ordered by the county, and the price thereof determined as thus stipulated. The building was to be delivered fully completed, and free from all liens and encumbrances for labor and material, on or before the first day of December, 1895. It was provided that the county of Page should appoint a superintendent, whose duties were to inspect and decide upon the quality and character of the material furnished and work done, and to report thereupon

during the progress of the work, and to notify the contractors of any shortcomings; and it was further provided "that should the superintendent permit any part of the work on the building to be completed without objecting thereto and giving notice to the said first party, it shall be taken and considered as an approval thereof, and said first party shall not thereafter be held responsible therefor, nor be required to construct the same without full and adequate compensation."

Provision was made for submitting differences to arbitration arising as the work progressed, and upon the completion of the work it was to be examined by the board of supervisors, and if it then appeared to have been completed in accordance with the contract, the building was to be accepted; and, finally, to exclude the idea of there being any other contract than that in writing, in relation to the erection and completion of the building, it is stated "that neither of the said parties is to be held to the performance of any supposed understanding or agreement not herein expressed, or set forth in specifications referred to herein, and made a part hereof."

Of the agreed price, $4,000 was to be paid upon the completion and acceptance of the building, and the residue in one, two, and three years from that time, with interest.

It appears that Rothgeb was designated by the board of supervisors to superintend the work as provided in the contract. The bill then alleges that almost immediately after the execution of the contract, the Manly Manufacturing Company, through Mr. Manly, began to ply the board with applications and inducements to extend the work.

Without stating in detail the various changes which were finally introduced, it is sufficient to state that the board of supervisors approved alterations in the contract, the cost of which amounted to the sum of $3,035.

The bill then avers that Manly, the president of the manufacturing company, by the exercise of many wiles and blandishments, acquired an influence over the gentlemen compris-

ing the board of supervisors of the county of Page, by which they became, with the most honest motives and purposes upon their part, the pliant victims of his seductive arts, and from time to time he induced them to authorize further changes and alterations, costing $3,871, none of which were authorized or sanctioned by the board of supervisors acting as such, but only by its individual members thus cajoled and deceived. The cost of the building was by these methods increased from $6,486.24, the original contract price, to the sum of $13,423.30.

It is further alleged that the work done was so imperfect and the material used so indifferent that the building is going to ruin and decay. The defects of construction are stated in much detail, but it is unnecessary to repeat them here.

In conclusion, the bill alleges that a most "pertinacious and adroit attack, contrived of mixed persuasives and menaces," has been brought to bear upon the board of supervisors in order to drive it into the nets thus spread, and to secure commitments in writing from it to these unlawful demands. The plaintiffs aver that they have entire confidence in the personal integrity and honesty of the members of the board, but unless some immediate remedy is applied to the present condition of affairs, they do not know how long it may be possible to defeat the cunning wiles and clever devices of Mr. Robert P. Manly.

The bill prays that the parties already named may be made defendants, that the board of supervisors be restrained and enjoined from accepting the jail and residence contracted for until completed according to the contract, and all shortcomings and defects supplied and amended, and until all false claims have been rejected, and the true and correct account ascertained and adjudicated, and the property freed from any claims for material and labor; that the board of supervisors shall be enjoined and restrained from either accepting the building or making any payment whatever to the Manly

Manufacturing Co., or other person, and that a receiver be appointed to take possession of the buildings, who shall, out of the funds to be supplied by the county, and to be ultimately charged to the Manly Manufacturing Company, put upon the building such repairs as shall serve to save it from further destruction and ruin; and that pending this litigation, and subject to the supervision and care of the receiver, the county of Page may be permitted to occupy and use the buildings for public purposes without being thereby committed to an acceptance of them as having been completed within the terms of the contract.

Notice was given by the plaintiffs that on November 20, 1896, they would apply to the judge of the Circuit Court of Page county, sitting in vacation, for the appointment of a receiver, and on that day the cause came on to be heard upon the said motion, and upon the bill and exhibits accompanying it; upon sundry affidavits on behalf of plaintiffs; upon the answer of the defendant, which was read as an affidavit, and the exhibits filed with it; and upon affidavits taken upon behalf of the defendant. Thereupon the judge deeming it unnecessary to pass upon the demurrer to the bill, entered a decree directing the sheriff of Page county to proceed forthwith to put the supervisors in possession of the jail building, yard, and appurtenances connected therewith, but without prejudice to any of the questions involved or proper to be decided in this cause between the parties, and that the supervisors proceed forthwith to put the jail in condition to be used for the purposes for which it was designed, and concluding thus: "It is further ordered that the clerk of the Circuit Court of Page county, Va., shall issue process, returnable to the next regular term of the Circuit Court of Page county, directing the board of supervisors in its official capacity to appear and do whatever is proper to protect its interests." From that decree an appeal and supersedeas was allowed to the

Manly Manufacturing Company by one of the judges of this court.

The board of supervisors as such was not at the date of the decree complained of a party to this suit. That it should have been, and was not, plainly appears to have been the opinion of the learned judge of the Circuit Court, and that he was right in this respect is established by the case of *Stuart & Palmer* v. *Thornton & others*, 75 Va. 215.

We do not propose to question the right of tax-payers to come into a court of equity to protect their interests in a great variety of cases. We shall confine our discussion of the subject to the case under consideration.

The board of supervisors was clothed by statute law with the duty of providing a jail for the county of Page, and of keeping it in good order. Code of Virginia, section 925. The Circuit Court, by section 931, is given authority to compel the supervisors to perform this duty, but its jurisdiction in that behalf is to be exercised by *mandamus*, and not by a bill in equity. Upon the board of supervisors then was imposed the duty, and in it was vested the requisite power to erect a jail, and that involved the authority to make all necessary contracts with respect thereto, and from time to time, as it might see fit, to make alterations and changes in the provisions of the original contract. All this is not questioned; but it is claimed that the individual members of the board of supervisors are without authority in the premises, and that only the board acting in its corporate capacity was capable of contracting or of authorizing changes or alterations in the contract which had been made. This is also free from doubt. The only question for us to consider is whether the plaintiff under the facts of this case have any footing in court.

The board of supervisors is not a party to this suit, or at least was not when the decree complained of was rendered. There is no averment that in making the contract it was acting in excess of the authority conferred upon it by law.

There could be no such charge. It was clothed with ample power to erect the building, to contract for its erection, to make modifications in the contract, and to make such alterations and changes as to it might seem wise and proper. There is no suggestion of fraud upon the part of the board of supervisors, or of any collusion between it and the Manly Manufacturing Company; on the contrary all such imputations are expressly disclaimed.

The gravamen of the bill is, that the contract, which it is admitted the board of supervisors had the right to make, and in which the interests of the county of Page have been carefully protected, has not been fulfilled and performed by the other party in such a manner as to entitle it to demand payment at the hands of the board. The contract provided precisely what the manufacturing company was to do. The question of its rights and the liability of the county of Page are to be ascertained by reference to its terms, and in this, as in other contracts of a like character, if the building has not been erected as contracted for, the remedy at law is plain, adequate, and complete. To hold that a tax-payer can come into a court of equity in a case in which no fraud is charged, and where there is no pretence that the board was transcending its power, merely to settle an account between a claimant and the board of supervisors, would be to extend the jurisdiction of the court far beyond the limit sanctioned by any adjudicated case or text writer to which we have been referred.

In the 18th volume of English Chancery Reports, at page 248, *Flewin* v. *Lewis*, Lord Chancellor Cottenham, speaking of the power of the Poor Law Commissioners, uses the following language: "I apprehend that the limits within which this court interferes with the acts of a body of public functionaries, constituted like the poor law commissioners, are perfectly clear and unambiguous. So long as those functionaries strictly confine themselves within the exercise of those duties which are confided to them by the law, this court will not interfere.

The court will not interfere to see whether any alteration or regulation which they may direct is good or bad; but, if they are departing from that power which the law has vested in them, if they are assuming to themselves a power over property which the law does not give them, this court no longer considers them as acting under the authority of their commission, but treats them, whether they be a corporation or individuals, merely as persons dealing with property without legal authority. That distinction, which is very obvious, sufficiently explains all the grounds on which this court ever interferes with the acts of bodies constituted as these commissioners are.''

This statement of the law is approved by Dillon in his work on Municipal Corporations, sec. 922, and note 3.

Dillion, after considering the decisions upon the subject, states the principle to be ''that the proper parties may resort to equity, and equity will, in the absence of restrictive legislation, entertain jurisdiction of their suit against municipal corporations and their officers, when these are acting *ultra vires*, or assuming or exercising a power over the property of the citizen, or over corporate property or funds, which the law does not confer upon them, and where such acts affect injuriously the property owner or the taxable inhabitant. But if in these cases the property owners or the taxable inhabitants can have full and adequate remedy at law, equity will not interfere, but leave them to their legal remedy.''

Sections 836, 837 and 838, of the Code, provide a remedy for any person having a claim against the county, and afford ample protection to the claimant, to the county, and to the tax-payer. Provision is made for an appeal from the decision of the board, and it is difficult to perceive how the right of the county could have been more carefully guarded. In the first place, before the claim can be paid it must be approved by the board of supervisors. If it be allowed by the board, the attorney for the commonwealth may, if he deems it im-

proper and unjust, require an appeal to be taken to the county court; or, if in the opinion of any six tax-payers, it appears to be improper or unjust, the attorney is required to appeal whatever his own opinion on the subject may be.

It is unnecessary to decide that the provision which requires the attorney to appeal at the instance of six tax-payers was intended to be in lieu of the right of tax-payers to resort to a court of equity, but, in the absence of any specific equitable claim or right, or of any peculiar fact or circumstance giving a court of equity jurisdiction, it might be reasonably contended that this provision affords a sufficient protection to the tax-payer, and was designed by the legislature as a plain and inexpensive substitute for the jurisdiction theretofore exercised by courts of chancery at the suit of tax-payers feeling themselves aggrieved. It is unnecessary for us to pass upon this question, and we make no decision upon it.

Another ground upon which the jurisdiction of a court of equity was invoked was that a receiver might be appointed to preserve the property which is alleged to be rapidly going to ruin and decay. The right to the possession of county property is in the board of supervisors. If, perchance, the actual possession of it be in another, the board may proceed at law to regain its rights as other suitors do, or it may acquire possession without resorting to the courts, if that can be done without a breach of the peace or other violation of law. The board of supervisors cannot give a lien upon a public building, nor does the contractor nor do those who furnish materials, nor the artisans employed in its construction acquire a lien of any kind upon it. Those who contract with the board of supervisors to do work for the county, or furnish materials to it, do so not upon the expectation of securing their compensation by a lien, but solely upon the faith and credit of the county. From whatever point, therefore, this case is viewed the plaintiffs are without a standing in a court of equity.

Opinion.

We are of opinion that the decree appealed from must be reversed, and the cause remanded to the Circuit Court of Page county, to be there proceeded with in accordance with the views herein expressed.

*Reversed.*