R. D. CONE v. ODIN WOLD and Others.[1]

January 24, 1902.

Nos. 12,825—(176).

### Corporation not for Pecuniary Profit—Dissolution.

A corporation organized under the provisions of G. S. 1894, c. 34, tit. 3, has no power to divert a gift from the specific purpose designated by the donor, without his consent. When such corporation declines to carry out the purpose or object of a gift of money as impressed upon such gift when made, declines to use the money for the purpose for which it was donated, and by decree of a court voluntarily dissolves and terminates its corporate existence, the amount of the gift reverts to the donor. It is not to be distributed among the members of the organization.

### Municipal Corporation—Suit by Taxpayer.

If a municipal corporation has a cause of action against another, it is the duty of its officers to institute legal proceedings; and, if they refuse to perform this plain duty, a taxpayer may apply to a court and be permitted to sue in equity in behalf of himself and all others similarly situated to enforce the right.

### Minneapolis P. R. D. Relief Association—Gift from City—By-Law.

The Minneapolis Police Department Relief Association was a corporation organized to accumulate funds, through dues, assessments, and contributions of members, and donations from other persons, to be used for certain prescribed purposes, wholly beneficial in their nature. By Sp. Laws 1891, c. 143, the legislature authorized the city to set apart and pay over to the association fifty per cent. of all amounts collected for dog licenses, to "be used by said relief association for the purposes provided

[1] Reported in 88 N. W. 977.

for and contemplated in its articles of incorporation, constitution and by-laws," provided that the city council should by resolution authorize such payments. This resolution was thereafter adopted by the council, and payments were made aggregating about $30,000. The association also received over $14,000 from members, and legitimately disbursed a little over one-sixth of the entire sum accumulated. It then attempted to amend its by-laws, and to permit withdrawing members to each receive a certain sum of money out of the treasury in addition to all amounts theretofore paid in by them. After $9,000 was withdrawn in this way the court restrained further payment upon withdrawals, and adjudged the amendment illegal. Proceedings were then commenced by a majority of the members to dissolve the association, terminate its existence, and wind up its affairs; and a decree of court was thereupon entered dissolving and ending the same, and a receiver of its money was appointed,—one of the appellants herein. The city was, with others, notified to file its claim if it had any. Its officers refused to act in any manner, and thereupon the court permitted a taxpayer to intervene in the winding-up proceedings, and to file a claim in behalf of the city for the amount theretofore paid to the treasurer of the association under the law of 1891, less such part as had been properly disbursed. *Held* that, when the association took the money, it was with the prescribed conditions annexed to the gift; that the transaction was in the nature of a resulting trust; and that upon a failure of the trust, by the dissolution of the corporation, the amount on hand which had been paid over by the city reverted to it. And *held*, that the court properly allowed the taxpayer to intervene and to present a claim against the association, and that it was not necessary for such taxpayer to institute a separate action to recover the money. *Held*, further, that the appellants in this action, the receiver and the members of the late association, are in no position to urge the elementary proposition of law, that a court will not permit a trust to fail for want of a trustee, as a reason why the intervenor's complaint failed to state a cause of action.

In proceedings in the district court for Hennepin county for the voluntary dissolution of the Minneapolis Police Department Relief Association, a dissolution was adjudged, defendant Odin Wold was appointed receiver of the corporation and its assets, and notice to file their claims was duly given to the creditors, including the city of Minneapolis. The city failing to file its claim, R. D. Cone, a resident taxpayer, filed a complaint of intervention by leave of court, for the benefit of the city and all other persons whose claims were filed, praying that the amount due from said corpora-

tion to the city be determined and paid to it out of the corporate assets. To this complaint general demurrers were interposed by defendant Wold, as receiver, and defendants Aasgaard, and others, claimants. From an order, Harrison, J., overruling the demurrers, defendants appealed. Affirmed.

*Wm. H. Donahue* and *Simon Meyers,* for appellants.

*Willoughby M. Babcock* and *George L. Nevius,* for respondent.

COLLINS, J.

The Minneapolis Police Department Relief Association was a corporation organized by Minneapolis policemen under the provisions of G. S. 1894, c. 34, tit. 3, which authorizes the organization of corporations other than those for pecuniary profit. According to its articles of incorporation, money was to be accumulated through dues, assessments and contributions of members, and donations from other persons, to be used for the support and relief of sick, disabled, or injured members, and for the payment of a certain sum, to be fixed by the by-laws, to the widows and orphans of deceased members, or, in case a member should die without wife or child, then to the beneficiary dependent on said member for support, being of kin, and designated in his certificate of membership; any member in good standing having the right to change his beneficiary by surrendering his certificate to the secretary and obtaining a new one, in which should be named the substituted beneficiary. The money was also to be used in payment of a certain sum, to be fixed by the by-laws, to a member of the association, upon the decease of his wife, for funeral expenses, and in payment of necessary expenses incurred in the management of corporate affairs.

By Sp. Laws 1891, c. 143, the legislature authorized payment to this association of fifty per cent. of all amounts collected for dog licenses in the city, for the purpose of creating and providing a fund for the use and benefit of the association; payment to be made by the city clerk as he collected the license fees. It was expressly provided in the law that

"The fund hereby created shall be used by said relief association for the purposes provided for and contemplated in its articles of incorporation, constitution and by-laws: provided, however, that

the city council shall, by resolution, authorize and direct the city clerk to take the action herein specified."

In January, 1892, the city council, by resolution, authorized and directed the city clerk to pay to the association the prescribed percentage of fees received by him, from and after June 1, 1892, and this was done, so that prior to the commencement of the present proceedings there had been paid over, under this law, and by virtue of the resolution, an amount exceeding $30,000. Meantime the members of the association accumulated, through dues, assessments, and contributions, something over $14,000, making a total fund of over $44,000; and of this amount about $7,400 had been disbursed prior to January 1, 1901, in accordance with the original articles. At that time a majority of the members, policemen in the city, were summarily discharged; and thereupon an attempt was made to amend the articles of incorporation so as to allow members to withdraw, and upon such withdrawal to receive out of the funds on hand the sum of $200 each, in addition to the amount theretofore paid as dues and assessments while members. Acting under this attempted amendment, nearly $9,000 was withdrawn. Thereupon the court enjoined further payments upon withdrawals, and adjudged the amendment illegal.

A majority of the members then petitioned the court for a dissolution of the corporation and a closing up of its affairs; and thereafter, in due course of law, judgment was duly entered as demanded, a receiver was appointed, and all parties ordered to file claims against the corporation, if any they had. Among the parties cited to file its claim was the city. At this time there was in the hands of the receiver over $30,000, and of this the amount paid and contributed by members did not exceed $9,000. Members remaining in said association insisted in this proceeding in dissolution that they were entitled to divide the entire amount in the treasury among themselves, without regard to the fact that the city had caused to be paid into the treasury, out of its own funds, more than two-thirds of the amount in the hands of the receiver.

The city authorities declined to file or to assert a claim to any part of the funds, and thereupon the intervenor, as a taxpayer,

asked leave of the court to file a complaint in intervention, upon the ground that the amount turned over by the city, and not legally disbursed, reverted to it upon dissolution of the corporation, and should be paid into its treasury. A complaint setting up the facts was served, and counsel for the receiver and for the members of the association demurred thereto upon the ground that it failed to state facts sufficient to constitute a cause of action. This demurrer was overruled by an order of the court below, and thereupon an appeal was taken.

1. Counsel for the appellants insist that, although a taxpayer, the intervenor has no right to appear and be heard in behalf of the city. In this state the right of a taxpayer to prevent the appropriation of public funds to an illegal use, where the officials, whose duty it is, refuse to proceed and to protect the people, was settled many years ago, and has since been asserted a number of times. The right of a taxpayer, under some circumstances, to maintain an action to recover moneys that have been unlawfully taken from the public treasury, has also been upheld. The following cases are directly in point: Sinclair v. Board of Commrs. of Winona Co., 23 Minn. 404; Smith v. City of St. Paul, 69 Minn. 276, 72 N. W. 104, 210; Flynn v. Little Falls E. & W. Co., 74 Minn. 180, 77 N. W. 38, 78 N. W. 106; Bailey v. Strachan, 77 Minn. 526, 80 N. W. 694.

The right is now recognized everywhere. If a municipal corporation has a cause of action of this character, it is the duty of its officers to institute proceedings; and, if they refuse to perform this plain duty, a taxpayer may apply to a court and be permitted to sue in equity in behalf of himself and all others similarly situated to enforce the right. The purpose of the remedy in such cases is not to interfere with the exercise of legal discretion on the part of those charged with the primary duty of enforcing corporate rights and claims, but to furnish relief where there is an unjustifiable neglect or refusal to exercise such discretion. It is too late to question the power of a court to permit such an action, or the propriety of a judicious exercise of the power.

2. It is also contended that under no circumstances can a taxpayer intervene in a proceeding to dissolve a corporation, for the purpose of enforcing a claim of this character; the only remedy

being by suit instituted directly against the receiver, or the corporation, or both. If this be true, it follows that the city itself would have no right to file or assert its claim in a proceeding taken to dissolve, but would have to bring an independent action, if it would recover any part of the fund in question. The proceeding to dissolve and end the corporation was voluntarily instituted by its members, and as said in Kalkhoff v. Nelson, 60 Minn. 284, 62 N. W. 332, the association thereby practically committed suicide, and when its estate is administered it ceases to exist. The city was cited to appear in that proceeding to dissolve and to wind up the corporation, and to file its claim, if any it had. It stood precisely as did every member of the association, and by failing to respond to the notice it could be as readily and conclusively barred from asserting its claim. That it was an artificial, instead of a natural, person, made not the slightest difference. Had the city or its representatives failed to appear and insist upon sharing in the distribution of assets, we are unable to see why it would not have been precluded, and thereafter unable to assert any rights whatever.

There is no good reason why a separate action should be either necessary or proper, and there is every reason for holding that in a proceeding directly instituted for the purpose of dissolving a corporation, distributing its assets, winding up its affairs, and terminating its legal existence, all parties interested in the assets should be brought into that proceeding. It is not a question whether the city might have maintained an independent action against the receiver or the corporation, but whether in this proceeding it is proper that the city should appear and file its claim. Surely, if the city is to recover anything, it must be before final order of distribution is made in this proceeding, and the money divided among the claimants. It was cited by the officer of the court to participate and to present its claim, and this officer, the receiver, cannot insist that it or its representatives should be heard.

3. The purposes of the association were definitely fixed by the by-laws prior to the enactment of the law of 1891, and consequently at the time when the council authorized and directed the

clerk to pay over the money in question. This law expressly enacted that the money should be used by the association for the purposes provided for and contemplated in the articles of incorporation and the by-laws. The object and intent of the law were to promote the very commendable purposes for which the association had been organized,—not for the profit or for the private benefit of the members, as such, but that funds might be accumulated to be preserved and used for the support and relief of the poor, the sick, the disabled and injured members, the widows or orphans of deceased members, and other beneficiaries, being of kin or dependent upon such members for support. The funds were also to be used in payment of certain sums for funeral expenses, and in addition to this, of course, the necessary expenses of managing the association,—a purely charitable organization. There was no intention that private purposes were to be served by dividing the money among the members at any time. In fact, such a division was forbidden by implication quite as effectually as if forbidden in express terms.

It is beyond question that the conditions found in the legislative act attached to and became a part of the resolution, and that the act of the city council, when authorizing payment of a portion of the dog-license fees, had these conditions annexed. The gift was limited by the terms of the law. When the association took the money with these limitations and conditions, the transaction was in the nature of a resulting trust; and upon failure of the trust the amount on hand which had been paid by the city would revert to it, precisely as it would if it had been the gift of a private person for the same purposes. The association declined to carry out the objects of the gift impressed upon it when made, and to distribute the money for the purposes for which it was appropriated; and, on the contrary, it committed felo de se. This it cannot do, and at the same time distribute the trust funds among its members. The object for which the city donated the money having failed, the donation reverts. A donor has a right to impress upon a gift a condition which will bind the donee to use the funds in the nature of a trust; and in section 2922 of title 3 (the section which authorized this association to accept this gift

from the city) it is provided that it should not have power to divert a gift, grant, or bequest from a specific purpose designated by a donor, without his consent.

It is legal for a donor to prescribe, by way of limitation, that his gift shall be kept and preserved so as to subserve a purpose which a donee corporation was created to promote. To so prescribe is nothing more than to declare that the trust fund shall be devoted to the objects which the legislature had in view when providing for the existence of the corporation. Atwater v. Russell, 49 Minn. 22, 39, 51 N. W. 624. Fosdick v. Town, 125 N. Y. 581, 26 N. E. 801, is cited as authority upon the principal question here; and we also call attention to McHugh v. McCole, 97 Wis. 166, 173, 72 N. W. 631; Abels v. McKeen, 18 N. J. Eq. 462; Duke v. Fuller, 9 N. H. 537; Easterbrooks v. Tillinghast, 5 Gray, 17; Coe v. Washington, 149 Mass. 543, 548, 21 N. E. 966,—as leading cases upon the proposition.

A part of the opinion in the case last cited is so directly in point that we quote it: "The assessments of the members and the contributions of the corporation were placed in the hands of this 'board' of government for certain purposes prescribed in the regulations. They had no right to apply them to any other purpose. The legal title to the fund was in them,' but they held it upon the trusts prescribed. When the corporation was dissolved, the society ceased to exist and the trusts failed. The regulations made no provision for such a contingency, and we think that the board, after the failure of the trusts, held the funds, not for its own benefit, but for the contributors and donors, as a resulting trust. * * * If the corporation had contributed the whole of the funds, not as a public charity, but for the support of this particular society during its life, it would seem to be very clear that at the death of the society the accumulated fund ought to go to it by way of a resulting trust. No one else could present any claim to it. The principle is not changed because the contributors are in fact very numerous. We are therefore of opinion that at the extinction of this society the board of government held the fund in question for the benefit of all the contributors, and that they are

entitled to it, each in proportion to the amount contributed by him."

The acceptance of the money from the city impressed with the condition amounted to a contract on the part of the association that it would use the money for the particular purposes specified in its constitution and by-laws as then existing, and upon its refusal to proceed further the money should be returned to the city as a resulting trust. The purposes for which it was created have ceased, and the trust has failed. It is upon this principle that the members who have paid assessments and dues and other-wise contributed to the funds are entitled to have a proper proportion returned to them. They would have no rights to the fund, were it not for this doctrine.

4. Counsel for the appellants, stating the elementary proposition that the court will not permit a trust to fail for want of a trustee, urge that the intervenor has no standing in court, because he is seeking to pervert the trust funds. They suggest that when such funds are about to be diverted from their proper use the court will restrain the act and appoint another trustee, and that under no circumstances will it divert the funds and deprive the beneficiaries of their rights.

These propositions of law are undoubtedly true, but counsel for appellants are in no position to urge them as a reason why the complaint fails to state a cause of action. Their clients are attempting to pervert the trust funds by appropriating all of the money to private uses, and, if the argument is sound, it applies to appellants as well as to respondent; for the former are attempting to do the forbidden acts. They are simply complaining because another party insists upon participating in an alleged illegal act of their own. We do not think these propositions of law have any bearing here; for, upon the petition of the majority of the members of the association, its legal existence has been terminated, and by the formal judgment of the court it has been so declared. The trust has failed through the deliberate and voluntary act of the beneficiaries. In any event these appellants cannot insist upon the application of the rules of law in question.

The complaint contained facts sufficient to constitute a cause of

action in intervention. A part of the money in the hands of the receiver reverts to the city, by virtue of the condition annexed to the gift, upon a failure of the trust; and this proportion can be determined by the court below in these proceedings.

Order affirmed.