# Richmond.

JOHNSON AND OTHERS v. BLACK AND OTHERS.

January 26, 1905.

1. EQUITY—*Multifariousness—Criterion.*—No general and invariable rule can be laid down as to what constitutes multifariousness, but each case must be determined by its own circumstances. The criterion by which courts are governed is convenience in the administration of justice. If the bill accomplishes the desired end in a convenient way for all concerned, and the mode adopted is not so injurious to any one as to render it unjust for the suit to be maintained in that form, it will not be deemed to be multifarious.

2. EQUITY—*Jurisdiction—Diversion of Funds—County Funds—Suit by Tax Payer on Behalf of Himself and Others—Remedy at Law—Code, Sec. 836.*—Equity has jurisdiction of a suit brought by one or more citizens and tax payers, suing on behalf of themselves and others similarly situated to restrain the illegal diversion of public funds by a Board of Supervisors of a county, and to compel the restitution of such funds which have been illegally diverted and lodged in the hands of persons not entitled thereto, and who had notice of the wrongful diversion, where the boards themselves will not act, or take the necessary steps to compel the restitution. This jurisdiction of equity, which has long existed, has not been taken away by provisions of sec. 836 of the Code, as amended. Courts of equity, having once acquired jurisdiction, never lose it because jurisdiction of the same matter is given to courts of law, unless the statute conferring such jurisdiction uses restrictive or prohibitory words.

3. LACHES—*Ignorance of Rights.*—Laches cannot be imputed to tax payers for ignorance of the fact that members of a board of supervisors have been misappropriating the public funds. They have the right to assume the contrary, and although the books of the supervisors are open to inspection, no duty of inspection rests upon the

tax payers. Laches will not be imputed to one who is innocently ignorant of his rights.

4. COUNTY SUPERVISORS—*Compensation—Extra Charges.*—The only compensation provided by law for supervisors of a county is the *per diem* and mileage fixed by sec. 848 of the Code (1904). No extra charge can be made by them for attendance on committees, or for other supposed beneficial services. If the compensation is inadequate they can resign. To take more than is allowed by law is a fraud in law upon the rights of the tax payers of the county, and restitution may be compelled.°

5. LIMITATION OF ACTIONS—*Suit by Counties Against Supervisors.*—The act of limitations runs against counties and other subdivisions of the State, in suits brought by them to recover debts, in the same manner and to the same extent as against natural persons. Supervisors of counties are constructive or implied trustees, and the statute of limitations applies to actions brought against them by counties to compel a restitution of funds diverted.

Appeal from a decree of the Circuit Court of Norfolk county, in a suit in chancery, wherein the appellees were the complainants, and the appellants were the defendants.

*Affirmed.*

The opinion states the case.

*Jno. W. Happer, Marshall R. Peterson* and *Frank L. Crocker,* for the appellants.

*John B. Jenkins* and *Green, Withers & Green,* for the appellees.

HARRISON, J., delivered the opinion of the court.

This suit in equity was brought by Foster Black and five others, resident citizens and tax payers of the county of Norfolk, against the Board of Supervisors of that county, and the appellants, for the purpose of compelling the appellants to restore to the county treasury certain public moneys which it is

charged they had illegally and fraudulently withdrawn there-from.

The bill alleges that the complainants had recently discovered that for eleven years said board had been continuously violating the law with respect to the compensation of its members, and had illegally and fraudulently, during that time, allowed and ordered to be paid out of the funds of the county, to the re-spective members of the board, compensation greatly in excess of that allowed by law. The names of the members of the boards during the time mentioned are set forth as defendants, and among them are the appellants.

There is filed with the bill, as a part thereof, a statement, exhibit "A," taken from the records of the board, which shows that, between June 10, 1890, and June 11, 1901, compensation aggregating $16,192.75 had been allowed by the board to its several members; that of this sum the appellant, W. S. John-son, who had been in office continuously during that time, had received the sum of $3,042.75; that the appellant, John A. Codd, who had been in office from 1892 to 1901, had received the sum of $3,893; that the appellant, George E. Wood, who had been in office from 1896 to 1901, had received the sum of $1,932; that the appellant, J. C. Lynch, who had been in office from 1896 to 1901, had received the sum of $849.50; and that the appellant, D. M. Harding, who went into office in 1901, had received the sum of $62.77. This statement also shows the several sums received by the other nine persons, defendants in the court below, during the respective periods of their occu-pancy of the office, to have been, according to length of service, in somewhat corresponding proportion to those mentioned. The bill further alleges that under the law regulating the compensa-tion of members of Boards of Supervisors, during the time mentioned, no member of such boards, for that time or for any part thereof could have legally been paid as compensation for

his services as much or anything like as much, for any one year, or for the whole of such time as the statement, exhibit "A," shows that the defendants received upon the order of the board of which they were respectively members. It is, therefore, further alleged that the payments so made to the defendants, and each and every one of them, as shown on said statement, were the result of an illegal, fraudulent, and corrupt combination upon the part of the members of said respective Boards of Supervisors, to divert to the use of themselves, in their individual capacity, money belonging to the tax payers of the county, which was controlled and held in trust by these several Boards of Supervisors as the representatives of the county for purposes authorized by law; that each of the defendants to whom such overpayments were made, as set forth, had notice of and participated and acquiesced in a fraudulent, illegal and corrupt breach of trust, and are liable in equity therefor, and can be treated therein, each of them, as trustee for the county and its tax payers, for the amounts so overpaid, with interest on the same from the date of such payments, and can be required in this suit to repay the same into the treasury of the county.

It is further alleged that if the amount of such overpayments can be recovered for the county, it will materially lessen the taxes to be paid by complainants and the other citizens of the county; that complainants had applied to the present Board of Supervisors of the county to take some steps to recover such illegal payments, but that it had refused to pay any attention to the application, and had treated the same with contempt, thus refusing complainants and the county any hope of relief from action on their part; that further application to said board in this behalf would be a useless waste of time as five out of its six members are parties defendant hereto whom complainants wish to compel to refund to the treasury of the county moneys illegally paid to them.

The prayer of the bill is that an account may be taken of the amounts illegally paid to the defendants from the funds of Norfolk county; that a decree may be entered against each of the defendants for the amount so found to have been illegally paid, to be paid into the treasury of the county, and that each of the defendants be declared and held to be a trustee for the county to the extent of such illegal and fraudulent payments, and for general relief.

The defendants filed their several demurrers and separate answers to this bill, and the demurrers were overruled. In their answers they set out the amounts they have received for attendance on the meetings of the boards and for mileage in going to and returning therefrom, as well as the amounts which they have received for service on committees of the boards, and for other alleged beneficial services rendered the county. They declare that they have faithfully performed their duties as members of the boards upon which they served, and deny that there was any illegal or fraudulent combination among them to divert the funds of the county to their own use, or that they have been guilty of any breach of trust in relation thereto, and claim that under a proper construction of the law, and in view of the arduous duties they have had to perform in such a large and prosperous county as Norfolk, and the manifest benefit of such services to the county, the amounts sought to be recovered were legally and properly allowed and paid to them. They also say that all of their meetings were open to the citizens of the county, and all of their allowances matters of public record, and that the complainants knew, or might by due diligence have known, of the allowances to themselves at the time they were made. They also plead in their answers the bar of the statute of limitations. Numerous depositions were taken, and certified copies from the records of the Boards of Supervisors filed.

The Circuit Court held that the evidence did not justify the charge that the defendants had entered into a fraudulent conspiracy, but only showed that they had followed an illegal custom and precedent of their predecessors in office, in illegally withdrawing from the treasury of the county compensation in excess of that allowed by law; that the defendants had illegally withdrawn from the county treasury compensation in excess of their lawful right, the amount of which excess in compensation the complainants were entitled to have returned to the treasury of Norfolk county, so far as the recovery of the same is not barred by the statute of limitations, being of opinion that the defense of the statute of limitations was good as to any defendant who had not drawn such illegal compensation within three years prior to the institution  of this suit.   The court, proceeding further, holds that a recovery is barred by the statute as to all of the defendants except W. S. Johnson, against whom a decree is entered for $945.20, with interest on the several parts thereof from the date that each payment was received; John A. Codd, against whom a decree is entered for the sum of $1,283.75, with like interest; George E. Wood, against whom a decree is entered for the sum of $1,070, with like interest; J. C. Lynch, against the administrator of whom decree is entered for the sum of $412, with like interest; and D. M. Harding, against whom decree is entered for the sum of $36.30, with like interest.   From this decree, which appoints a receiver to collect these several sums, the five defendants held liable have taken this appeal.

The first assignment of error is to the action of the court in not sustaining the demurrer to the bill.

It is insisted that the bill is multifarious, and should for this reason have been dismissed.

It has been repeatedly said by this court that it is impossible for courts to lay down any general rule as to what consti-

tutes multifariousness; that they are left to decide each case
upon its own circumstances, governed only by a sound discre-
tion. The criterion by which courts are guided in considering
this question is "convenience in the administration of justice."
Each case, if not brought directly within the principle of some
preceding case, must be decided upon its own merits, and upon
a survey of the real and substantial convenience of all parties;
the adequacy of the legal remedy, the situation of the different
parties, the points to be contested, and the result which would
follow if jurisdiction should be assumed or denied; whether
within reasonable and fair grounds the suit is calculated to be
in truth one which will practically prevent a multiplicity of
litigation, and will be an actual convenience to all parties, and
will not unreasonably overlook or obstruct the material in-
terests of any.

In the case of *School Board* v. *Farish*, 92 Va. 160, 23 S. E.
221, this court said: "Courts in dealing with this question look
particularly to convenience in the administration of justice;
and if this is accomplished by the mode of proceeding adopted,
the objection of multifariousness will not lie, unless the course
pursued is so injurious to one party as to make it inequitable to
accomplish the general convenience at his expense. So that
when we look to see if a bill is multifarious, the first question
to be determined is: Does the bill propose to reach the end
aimed at in a convenient way for all concerned? And if the
mode adopted does accomplish the end of convenience, then the
question arises, is any one hurt by it, or so injured as to make
it unjust for the suit to be maintained in that form?" These
views are reiterated with approval in the subsequent cases of
*Spooner* v. *Hilbish*, 92 Va. 338, 23 S. E. 751; *Staude* v. *Keck*,
92 Va. 544, 24 S. E. 227; *Jordan* v. *Liggan*, 95 Va. 616, 29 S.
E. 330; and *Dillard* v. *Dillard*, 97 Va. 436, 34 S. E. 60.

Considering the bill in the case at bar in the light of these

authorities, there is no difficulty in the conclusion that it is free from the vice of multifariousness. The plaintiffs were suing as the representatives of a class, the issues to be determined were common to all of the defendants, and they were in the same situation so far as the points to be contested were concerned, the same defenses being made by them in their several answers. They have had the opportunity, without the slightest embarrassment or difficulty, to make their defense in a suit in which no possible harm has been or could have been done them; and, lastly, they have been saved a heavy burden of costs to each defendant which would have been the result of a separate suit brought against each. In short the ends of justice have been reached with the greatest possible convenience to all concerned, and without injury or even inconvenience to any party to the proceeding.

It is further contended that the demurrer should have been sustained and the bill dismissed because the appellees had an adequate remedy at law.

It has long been a well-established doctrine that courts of equity have jurisdiction to restrain the illegal diversion of public funds at the suit of a citizen and tax payer, when brought on behalf of himself and others similarly situated; and to compel the restitution of public funds which have been illegally diverted and lodged in the hands of persons not entitled to the same, who have taken them with notice of the wrongful diversion, and the governing body of the subordinate or local government will not act or take the necessary steps to have such funds restored. *Bull* v. *Read*, 13 Gratt. 78; *Redd* v. *Supervisors*, 31 Gratt. 695; *Roper* v. *McWhorter, &c.*, 77 Va. 215; *Lynchburg, &c. Co.* v. *Dameron*, 95 Va. 545, 28 S. E. 951; *Crampton* v. *Zabriskie*, 101 U. S. 601, 25 L. Ed. 1070; *Anderson* v. *Pratt*, 44 Cal. 309; *Bailey* v. *Strachan* (Minn.), 80 N. W. 694; *Land Log & L. Co.* v. *McIntyre*, 100 Wis. 245, 75 N.

W. 964, 69 Am. St. 915; *Zuelly* v. *Casper*, 160 Ind. 455, 67 N. E. 103, 63 L. R. A. 133; *In re Police Dept.*, 85 Minn. 302, 88 N. W. 977; *Shepherd* v. *Easterling*, 86 N .W. 941.

But the appellants contend that notwithstanding the well-settled doctrine recognized by the authorities just cited, the appellees have an adequate remedy at law under section 836 of the Code of 1887, which, as amended, is carried into Virginia Code, 1904, sec. 836.

Courts of equity having once acquired jurisdiction never lose it because jurisdiction of the same matter is given to courts of law, unless the statute conferring such jurisdiction uses restrictive or prohibitory words. *Filler* v. *Tyler*, 91 Va. 458, 22 S. E. 235; *Kelly* v. *Lehigh, &c. Co.*, 98 Va. 405, 36 S. E. 511, 81 Am. St. 736; *Steinman* v. *Vicars*, 99 Va. 595, 39 S. E. 227.

There is not a word or expression in the statute mentioned to indicate an intention to take away the jurisdiction that has been exercised for years by courts of equity in this class of cases. The section provides how accounts, to be allowed by the Board of Supervisors, shall be made out; that the county shall be represented by the Commonwealth's Attorney, and all improper accounts resisted by him, and when he thinks proper, or shall be required to do so by any six freeholders of the county, he shall appeal from any decision of the board to the Circuit Court of the county, causing a written notice of such appeal to be served on the clerk of the board, and on the party in whose favor the claim is allowed, within thirty days after the decision is made. It is thus seen that the right of appeal under this section, from the allowance of a claim by the Board of Supervisors, is limited to freeholders and to the concurrence of six of their number, and its exercise is limited to thirty days from the decision of the board. It cannot be presumed that the Legislature intended by this statute, without restrictive or prohibitory words, to take away the jurisdiction of courts of equity

to entertain any tax payer suing on behalf of himself and others similarly situated for the purpose of preventing the unlawful diversion of public funds, or for the purpose of compelling the restoration of such funds when already diverted.

But it is contended that this question has been settled to the contrary, by this court, in the cases of *Pearson* v. *Supervisors,* 91 Va. 322, 21 S. E. 481, and *Manly Mfg. Co.* v. *Broaddus,* 94 Va. 547, 27 S. E. 438. The sole object of the first mentioned case was to test the constitutionality of the Virginia election law approved March 6, 1894. To accomplish this certain citizens and tax payers of Brunswick county filed a bill alleging that an election had been held under this law and certain expenses had been incurred thereby; that bills covering these expenses had been presented to and allowed by the Board of Supervisors of the county and warrants drawn on the county treasurer therefor. They further alleged that the law under which the election had been held was unconstitutional and void, and that the expenses accruing thereunder were therefore not legal charges against the county, and praying that the treasurer be enjoined from paying the same. This court held that the law in question was valid. Judge Keith, after concluding his elaborate and able opinion on the constitutional question, which was a complete decision of the case, added these words: "If, however, we had come to a different conclusion as to the constitutional question involved in the record which accompanies the petition in this case, we would still be obliged to refuse the appeal asked for, as the plaintiff had a plain and adequate remedy at law under section 836 of the Code of Virginia without resorting to a bill in chancery."

It may be that the remedy for the improper allowance of a claim for election expenses is by an appeal under section 836 from the decision of the Board of Supervisors; but it is apparent that the learned judge was not dealing with the question

now under consideration, nor was the language relied on neces-
sary to the decision then made. It cannot, therefore, be re-
garded as militating against the view taken of the case before us.

The last mentioned case of *Manly Mfg. Co.* v. *Broaddus,*
*supra,* holds that a tax payer cannot come into a court of equity
in a case where no fraud is charged, and where there is no pre-
tense that the Board of Supervisors was transcending its power,
merely to settle an account between a claimant and the board.
The facts of the case are wholly different from those in the
present case, and Judge Keith, in delivering the opinion of the
court, says it is unnecessary to decide that the provision which
requires the attorney to appeal at the instance of six "tax
payers" was intended to be in lieu of the right of tax payers
to resort to a court of equity, and we make no decision upon it.
The opinion of the learned judge recognizes the right of tax
payers to come into a court of equity to protect their interests
in a great variety of cases, and cites authorities in support of
the proposition. These cases are not in conflict with the doc-
trine we have announced with reference to the jurisdiction of
a court of equity in a case like the one before us, and we con-
clude what we have to say on this subject with the remark that
whatever remedy section 836 may afford as against a claim al-
lowed by the Board of Supervisors before the same has been
paid, it certainly furnishes no remedy for the recovery of
moneys illegally diverted from and already paid out of the
public treasury which is the object of the present suit.

It is further assigned as ground in support of the demurrer
that the appellees were guilty of laches.

The evidence shows that the appellees were not aware that
the members of the Boards of Supervisors had been drawing
extra compensation until a few months before the institution
of this suit, and it is well settled that laches cannot be imputed
to those who are ignorant of their rights. It is no answer to

say that the books of the board were open to the public, and
could have been examined at any time. No duty rested upon
appellees to examine the records kept by the Board of Super-
visors. They, in common with other tax payers, had the right
to presume that their chosen representatives and agents would
faithfully discharge their public duties within the law that
regulated and prescribed those duties, and that they would not
illegally divert the public funds to their private use. The ap-
pellants represented the public, and they cannot escape liability
upon the ground that their constituents did not discover sooner
that they were unlawfully withdrawing the money of the tax
payers from the public treasury and appropriating the same to
their individual use.

Further detail would extend this opinion, necessarily long,
beyond reasonable limits. It must, therefore, suffice to say
that, considering all of the objections made to the scope and
purpose of the bill, we are of opinion that the demurrers were
properly overruled.

The only compensation provided by law for a supervisor is
fixed by section 848 of the Code of 1887, which, as amended,
is now found in Virginia Code (1904), section 848. It is there
provided that each supervisor shall receive "three dollars *per
diem* for the time he shall actually attend, and five cents for
each mile travelled in going to or returning from the place of
meeting; but no *per diem* allowance should be made for any
time occupied in travelling where mileage is allowed therefor;
provided that but one mileage shall be allowed for any one
term of meeting of such board; and no supervisor shall be al-
lowed to draw pay for more than ten days' attendance in any
one year."

The record shows that during the period covered by this in-
quiry, the members of the Board of Supervisors of Norfolk
county appropriated and received for their private individual

Opinion.

use thousands of dollars in excess of the *per diem* and *mileage* provided by the plain terms of the statute. The justification offered for this course is that the amount received was for attendance upon committees, and for other alleged beneficial services rendered by them to the county in their official capacity, and was no more than these services were reasonably worth, and that their action in this behalf was in accordance with the custom of their predecessors in office. This may not have been regarded by appellants as *malfeasance*, and it was doubtless not done with an evil intent, but it was none the less fraud in law upon the rights of the tax payers of the county. Services rendered by public officers do not partake of the nature of contracts and have no affinity thereto. In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right. *Loving* v. *The Auditor*, 76 Va. 942; *Holladay* v. *The Auditor*, 77 Va. 425; *Frazier* v. *V. M. I.*, 81 Va. 59; *Sinclair* v. *Young*, 100 Va. 284, 40 S. E. 907; *Taylor* v. *Beckham*, 178 U. S. 548, 44 L. Ed. 1187, 20 Sup. Ct. 890.

In Dillon on Municipal Corporations, Vol. 1, sec. 233, it is said: "It is a well settled rule that a person accepting a public office with a fixed salary is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of those duties, even though the salary be a very inadequate remuneration for the services. Nor does it alter the case that by subsequent statutes or ordinances his duties within the scope of the charter powers pertaining to the office are increased and not his salary. Whenever he considers the compensation inadequate, he is at liberty to resign. The rule is of importance to the public. To allow changes and additions to the duties properly belonging or which may properly be attached to an office to lay a foundation for extra compensation would soon introduce intolerable mischief. The rule,

too, should be very rigidly enforced. The statutes of the legislatures and the ordinances of our municipal corporations seldom prescribe with much detail and particularity the duties annexed to public offices, and it requires but little ingenuity to run nice distinctions between what duties may and what may not be considered strictly official; and, if these distinctions are much favored by courts of justice, it may lead to great abuse."

To the same effect is Mechem on Public Officers. This author says that unless compensation is attached by law to an office none can be recovered. A person who accepts an office to which no compensation is attached is presumed to undertake to serve gratuitously, and he cannot recover anything upon the ground of an implied contract to pay what the service is worth. In section 862 of this work it is said: "Neither can he recover extra compensation for incidental or collateral services which properly belong to or form a part of the main office. An express contract to pay such extra compensation or an express allowance of it is void."

These views are also found expressed in Throop on Public Officers, and by other text-writers.

·In a very able opinion in the case of *Delaplane* v. *Crenshaw*, 15 Gratt. 457, Judge Lee, in discussing this subject, says: "It is certainly a marked feature in our system of offices that the compensation of public functionaries shall be fixed and certain. It is a great and pervading principle of our Code, and is essential to the purity and impartiality of the government. The idea of a perquisite of office, in the sense of a fee or allowance for services beyond the ordinary salary or settled wages, has no place in our legislation, but seems to be repudiated by the most necessary implication. Once to admit it is to open a wide door for imposition and corruption." Further the learned judge says: "He takes the office on the terms and conditions prescribed by the statute, and when it allows a fixed and definite

fee for the service which he is to perform, I think it is very far fetched and illogical to say that he acquires also, by virtue of his appointment, a right as by contract to a portion of the property of the citizen in respect of which his office is to be exercised, because his predecessors in the office may have been in the habit of taking a like portion without objection or protest on the part of those with whose property they had been called upon to deal. The only contract which, as it seems to me, can possibly be inferred from an appointment to a public office created by statute, with special fees for the services rendered, and its acceptance is an agreement on his part to perform the duties of the office, and on the part of the public that he shall be entitled to the fees prescribed by the act when the services shall have been rendered."

These principles are by universal consent thoroughly established throughout this country, and the public welfare demands that they should be enforced. Payment from the public funds for all official duties rests alone upon legislative sanction, which is the exclusive compensative power of the government. *U. S.* v. *Shields,* 153 U. S. 88, 38 L. Ed. 645, 14 Sup. Ct. 635; *Talbot* v. *East Machias,* 67 Me. 415; *White* v. *Inhabitants of Levant* (Me.), 7 Atl. Rep. 539; *Sykes* v. *Inhabitants of Hatfield* (Mass.), 13 Gray. 347; *Hilman* v. *Board of Commissioners* (Minn.), 86 N. W. 890; *Wright* v. *Board of Commissioners* (Mont.), 41 Pac. 271; *Jones* v. *Commissioners,* 57 Ohio St. 189, 48 N. E. 882, 63 Am. St. 710; *Albright* v. *County of Bedford,* 106 Pa. St. 582; *Hope* v. *Hamilton County* (Tenn.), 47 S. W. 487; *Stone* v. *Bevans,* 88 Minn. 127, 92 N. W. 520, 97 Am. St. 506; *Snipes* v. *Winston,* 126 N. C. 374, 35 S. E. 610, 78 Am. St. 666.

In obedience to the foregoing reasoning and the authorities cited, the conclusion is plain that the appellants have without authority of law appropriated to their own use the public funds

Opinion.

of the county of Norfolk, and that they should be required to restore the same to the public treasury, to the extent that they severally appear to be liable therefor.

Under Rule IX. of this court, the appellees assign as cross error the action of the Circuit Court in sustaining the pleas of the statute of limitations, set up in the answers of the appellants as a defense in part to the bill.

This is a civil proceeding for the recovery of certain sums of money claimed to be due by the appellants to the county of Norfolk, and the county is practically the complainant. The appellants are only constructive or implied trustees, and in such cases it seems to be well settled that the bar of the statute applies.

The right expressed in the maxim *"nullum tempus occurit regi"* is an attribute of sovereignty and cannot be invoked by counties or other sub-divisions of the State. As to such sub-divisions of the State the statute runs in the same manner and to the same extent as against natural persons. Wood on Lim. of Actions, sec. 53; Dillon on Mun. Corp., Vol. 2, sec. 668; *Armstrong* v. *Dalton,* 4 Dev. (N. C.) 568; *Clements* v. *Anderson,* 46 Miss. 581; *County of St. Charles* v. *Powell,* 22 Mo. 525, 66 Am. Dec. 637; *City of Palle* v. *Scholte,* 24 Ia. 283; *May* v. *School District* (Neb.), 34 N. W. 377, 3 Am. St. 206; *Mount* v. *Lebanon,* 21 Ohio St. 643.

In a note to *Herrington* v. *Harkins,* 1 Rob. 591, in the Va. Rep. Anno., p. 273, it is said: "Statutes of limitations run against public corporations, whether they are municipal or mere agencies of the State. Such corporations are more or less branches of the government, and necessarily are clothed with the attributes and incidents of sovereignty; yet when they have power to sue and be sued, to have a common seal, to take and hold property, and transact business, they are governed by the same laws and regulations, and subject to the same limitations, as natural persons, unless exempt by positive law." Citing

*Western Lunatic Asylum* v. *Miller*, 29 W. Va. 326, 1 S. E. 740, 6 Am. St. 644, and *McClanahan* v. *Western Lunatic Asylum*, 88 Va. 466, 13 S. E. 977.

These authorities fully sustain the conclusion reached by the learned judge of the Circuit Court, that the appellants were entitled to the benefit of their plea of the statute of limitations.

Upon the whole case, we are of opinion that there is no error in the decrees appealed from, and they are affirmed.

*Affirmed.*