# CIRCUIT COURT OF THE CITY OF RICHMOND

Peter T. Wilbanks
and Kelly Jones Wilbanks

v.

Gene Watson et al.

November 23, 1999

Case No. LE-1283-3

BY JUDGE T. J. MARKOW

The parties appeared on Defendants Gene Watson and Gene Watson & Associates, Inc.'s Demurrer, Defendant Fidelity National Title Insurance Company of New York's Motion to Dismiss, and on the Demurrer of the Prudential Home Mortgage Company, Inc., and argument was heard. The court previously announced that Prudential's Demurrer was sustained. For the reasons stated below, the court overrules Watson's Demurrer and denies Fidelity's Motion to Dismiss. The court first addresses Watson's Demurrer.

On demurrer, the court takes all material facts properly pleaded as true. Those facts are established which are expressly alleged, those which can be fairly viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22 (1993).

On April 4, 1996, Prudential Home Mortgage Corporation offered property located at 1256 Rothesay Circle in the City of Richmond for sale through its broker, Prudential James River. That day, the Plaintiffs, Peter T. Wilbanks and Kelly Jones Wilbanks, viewed the property and agreed to purchase. The Wilbanks executed a real estate purchase contract, and Prudential accepted on April 18, 1996.

A licensed, professional land surveyor, Gene R. Watson of Gene Watson and Associates prepared a survey, dated June 5, 1996, describing the property as "Lot 1 Plan of Rothesay Hill Resubdivision of Lot 17 Rothesay with Improvements Located in the City of Richmond, Virginia." Mr. Watson delivered the survey that same day to the Wilbanks. The survey found "no encroachments by improvements either from adjoining property, other than as shown hereon[.]" (*See* the notation on the survey.)

Additionally, the Wilbanks purchased title insurance coverage for the property from Fidelity National Title Insurance Company of New York. The insurance was purchased prior to closing, and, like the survey, a copy is attached to the Wilbanks' Verified Motion for Judgment (hereinafter M/J).

Soon after closing, the Wilbanks encountered a drainage problem on the property and called the City of Richmond to repair the drainage system located in the road in front of their house. To the couple's surprise, the City informed the Wilbanks that the road was private, so the City was not responsible for repairs. The information prompted the Wilbanks to investigate the survey of the property.

They discovered that the survey does not depict where Rothesay Circle is in relation to the property. Apparently, the boundary between the property and the road is located about thirty feet closer to the Wilbanks' home than the Wilbanks believed after their personal inspection of the property. The difference is approximately 54% of what the Wilbanks thought was their front yard. However, the survey does include other improvements which are not located on the property, but which surround it, such as fences to the property's west and the Richmond Expressway to the south and southeast. Therefore, the Wilbanks state, the survey and the representations made by Prudential and Fidelity induced the couple to purchase property which may be landlocked with no access to a public way.

The Wilbanks have learned that the land between their property and the roadway is owned by Jonathan Bryan by a deed dated and recorded in 1912. The Wilbanks have a petition pending to purchase the property in front of their house in an escheat sale. They assess their damages as including the actual costs and fees, including the purchase price of the property should the sale be approved and, if not, the diminution in value of the property caused by the loss of the parcel, which apparently belongs to Mr. Bryan. The Wilbanks also ask for the costs to repair the drainage problem including repairs to structural damage already done to the home. The court notes that the Wilbanks do not sue Watson for breach of contract, but rather in tort.

Watson filed this Demurrer stating as its single ground that the M/J "seeks economic damages from them in this situation where there is no privity of

contract between the plaintiffs and these defendants as required by Virginia law." (Defs.' Grnds. of Def. ¶ 24.) Section 8.01-273 of the Virginia Code states, "All demurrers shall be in writing and shall state specifically the grounds on which the demurrant concludes that the pleading is insufficient at law. *No grounds other than those stated specifically in the demurrer shall be considered by the court.*" (Emphasis added.) Therefore, as required by statute, the court rules as to this ground alone, despite other grounds raised by counsel during argument.

Answering a certified question from the federal Court of Appeals for the Fourth Circuit, the Supreme Court of Virginia declared that no cause of action lies for economic losses where the parties are not in privity of contract. *See Sensenbrenner v. Rust, Orling & Neale,* 236 Va. 419 (1988). In light of the rule articulated by the court, Watson argues that the Wilbanks are seeking economic losses. Furthermore, Defendants argue that Virginia law precludes this action because the Wilbanks did not sufficiently allege that they are in privity of contract with Watson. The Wilbanks contend that they were, in fact, in privity. In their written response to the Demurrer, the couple asserts that the allegation of privity of contract can be reasonably inferred from the language of the M/J.

The court agrees with the Wilbanks that their pleading sufficiently alleges privity of contract. Paragraph 14 of the M/J states that Mr. Watson, "acting through Gene Watson & Associates prepared and delivered to the Wilbanks a survey of the Property." The survey, attached to the M/J, identifies the Wilbanks as purchasers of the property. Though not an explicit statement of an agreement between the Wilbanks and Watson for the survey, these allegations lead to a fair inference that the parties were in privity. Therefore, the M/J sufficiently alleges the privity of contract necessary for a cause of action, and the court overrules Watson's Demurrer.

Next, Fidelity brings a motion to dismiss it as a party to this action due to misjoinder under Va. Code Ann. § 8.01-5. Fidelity argues that the tort claims alleged against Watson did not arise from the same transaction or occurrence as the breach of contract claim alleged against Fidelity. Fidelity adds that it does not have the necessary relationship with the other defendants to otherwise allow joinder of these claims.

In their response, the Wilbanks cite Va. Code Ann. § 8.01-281 and state that they are merely pleading alternative facts and theories against different defendants. The Wilbanks also state that the damages they seek from all defendants arise from one transaction, "the Wilbanks' purchase of the property." (*See* Pls.' Opp. to M. to Dismiss ¶ 2.)

The court may "drop" or dismiss a misjoined party "as the ends of justice may require." Va. Code Ann. § 8.01-5 (1950); *see also Powers v. Cherin*, 249 Va. 33 (1995). A misjoinder of parties can arise when causes of action are misjoined. Under § 8.01-281(A), separate causes of action may be decided in one proceeding if the claims are based on the "same transaction or occurrence." *See Powers*, 249 Va. 33 (1995).

"It has been repeatedly said by [the supreme] court that it is impossible for courts to lay down any general rule as to what constitutes multifariousness; that they are left to decide each case upon its own circumstances, governed only by a sound discretion. The criterion by which courts are guided in considering this question is convenience in the administration of justice." *Johnson v. Black*, 103 Va. 477, 482 (1905) (decided before the enactment of § 8.01-281). *Powers v. Cherin* provides an example of separate transactions. 249 Va. 33 (1995).

In *Powers*, the plaintiff sued the defendant-driver for negligence and sued a dentist for malpractice in treating plaintiff for injuries caused by the accident. The Supreme Court of Virginia held that the causes of action were misjoined and affirmed a trial court's dismissal of the dentist. *Id.* at 37-38. In *Powers*, the plaintiff sought joint and several recovery for separate injuries from what the court deemed as two occurrences, the accident and the subsequent dental treatment. *Id.* at 37. The Court explained that the dentist could not be liable for original injuries sustained in the accident, and also, that the driver could not be liable for injuries sustained from negligent treatment that were more than mere aggravation of plaintiff's original injuries. *Id.* at 37-38. One transaction, the accident, occurred leading to injuries and was followed by a second transaction, the dental treatment, which involved separate and distinct evidence leading to different injuries. *Id.*

Here, the Wilbanks seek recovery from Fidelity based on an insurance contract that the Wilbanks entered into with Fidelity on July 1, 1996. The action against Watson alleges injury arising from Mr. Watson's survey work performed on June 5, 1996. The M/J alleges that the insurance contract between the Wilbanks and Fidelity covers such injuries. The Wilbanks allege that the negligent survey caused injuries for which both Watson and Fidelity are liable. Therefore, the evidence necessary to prove the damages sustained as a result of Watson's alleged negligence and fraud would be the same evidence required to prove damages due from Fidelity under the contract of title insurance.

Assuming that the insurance contract covers injuries sustained due to an erroneous survey and that Fidelity does not stipulate the liability of Watson, if Fidelity were dismissed and a separate action were allowed to continue,

440

Fidelity would possibly be able to relitigate Watson's defenses to negligence and fraud. There would be a serious risk of inconsistent outcomes on the same issue litigated in two different, duplicative proceedings. If Fidelity were dropped and the suit were allowed to continue against Watson, estoppel principles would not apply to the second proceeding because the parties would lack mutuality. *See Bates v. Devers*, 214 Va. 667, 671 (1974); *see also Clinchfield Coal Co. v. Barton*, 6 Va. App. 576 (1988). Therefore, in the interests of justice and judicial efficiency, Fidelity's Motion to Dismiss is denied.

It is, therefore, ordered, that the demurrer filed by Gene Watson and Gene Watson and Associates is overruled and Fidelity National Title Insurance Company of New York's Motion to Dismiss is denied. It is further ordered that the Demurrer of the Prudential Home Mortgage Company, Inc., is sustained and the Motion for Judgment is dismissed as to that Defendant.